[No. 12661.   In Bank. — December 12, 1890.]

# JOHN BENSON, RESPONDENT, *v.* J. M. SHOTWELL, APPELLANT.

VENDOR AND PURCHASER — CONTRACT OF SALE — RETURN OF DEPOSIT — OPTION OF PURCHASER — CONSTRUCTION OF CONTRACT. — A memorandum signed by a vendor, acknowledging the receipt of a certain sum of money as a deposit on account of the sale of certain land therein described, for a price fixed, and providing that the sale should be null and void and that the deposit should be returned in case the title did not prove satisfactory to the purchaser, is a valid contract for the purchase and sale of the land, and not a mere sale of an option to the purchaser to buy the land.

ID. — STATUTE OF FRAUDS — ACCEPTANCE OF PURCHASER. — The memorandum will bind the vendor if signed by him, though not signed by the purchaser, and the payment of the deposit by the purchaser is a sufficient acceptance by him of the terms of the contract.

ID. — LIEN OF PURCHASER FOR AMOUNT OF DEPOSIT. — The purchaser has a lien upon the property, for the amount of the deposit, in case of failure of the vendor to make good his part of the contract, unless the vendee is himself first in default.

ID. — ABSTRACT OF TITLE — MISNOMER OF GRANTOR — INSUFFICIENT TITLE OF RECORD. — Where the abstract of title showed that the title of record came into "H. P. Hepburn," and there was no deed from him, but the next deed of record was from "H. P. Hopkins," and the vendor claimed that the record was wrong, and that the deed purporting to be from Hopkins was in fact from Hepburn, but refused to submit his proof for examination of the purchaser or permit the deed to be recorded correctly, a good title is not shown, and the purchaser is justified in refusing to buy the land, and may claim return of the deposit, even though it may be afterward proved that the title was good.

ID. — SATISFACTORY TITLE — PRESCRIPTION. — Under an agreement for the purchase of land on condition that title would be satisfactory to the purchaser, the purchaser is entitled to a good paper title of record, which is sufficient in law, and is not bound to accept a title resting upon the statute of limitations, or to take the risk of determining, from facts *de hors* the record, whether or not an adverse claim is barred by limitation.

ID. — CONTRACT FOR POSSESSION — CONSTRUCTION — ACTUAL POSSESSION — ATTORNMENT OF TENANTS — INCOMPLETE POSSESSION. — Where the agreement for the sale of land provided that possession would be given and guaranteed to the purchaser, the purchaser is entitled to an actual *possessio pedis* of the whole land, and constructive possession by attornment of tenants is not sufficient; and where it appears that the tenants refused to give possession, and several of the houses were locked up and the occupants absent, and that an adverse right had grown up as to part of the land, the promise by several of the tenants to attorn to the purchaser does not constitute the delivery of possession required by the contract.

ID. — ASSIGNMENT OF PRIOR RENT — ENCUMBRANCES — TENANCY. — The fact that the contract of sale provided that the purchaser should be entitled to rent from a day anterior to the date of the contract does not bind the purchaser to take the lot subject to encumbrances, or to the right of possession of tenants at the time of final completion of the terms of the agreement, nor modify a provision in the contract for delivery of possession.

ID. — CONCURRENT CONDITIONS. — Where by the terms of the contract the delivery of possession and transfer of title by the vendor, and payment of purchase-money by the purchaser, were to be simultaneous and concurrent, the conditions are mutual and dependent, and the vendor is not entitled to demand the purchase-money until delivery of possession.

ID. — QUIETING TITLE — ACTION BY VENDOR — RETURN OF DEPOSIT — RIGHTS OF PURCHASER. — Where the purchaser of land pays a deposit on account of the sale, under an agreement with the vendor, by which he was to have the deposit returned to him if the title should not be satisfactory, and it appears that the purchaser is entitled to a return of the deposit, the vendor cannot have his title quieted against the purchaser until he first restores the money received.

ACTION TO QUIET TITLE — EQUITY — MAXIM. — An action to quiet title is in the nature of a suit in equity, and relief therein is subject to the maxim that he who asks equity must do equity.

ID. — RESCISSION OF CONTRACT — RESTORATION OF MONEY RECEIVED. — Where the plaintiff in an action to quiet title, if he had brought an action to rescind a contract with the defendant would not have been entitled to that relief until he had restored all that he had received under the contract, he cannot avoid this obligation by coming into equity to quiet his title.

APPEAL — FINDINGS — SUPPORT OF JUDGMENT — MODIFICATION — REVERSAL. — Upon appeal, where the findings as they stand would not support a judgment for the appellant, and the appellant is entitled to a reversal of the judgment, the judgment cannot be modified, in the appellate court, so as to give the appellant the relief to which he is entitled, as the appellate court cannot make findings for the court below, but can only reverse the judgment.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*A. N. Drown,* for Appellant.

The transaction was a sale. (Civ. Code, sec. 1726, subd. 3, and sec. 1729.) The contract is valid, sufficient, and complete. It did not require the vendee's signature. (*Fabian* v. *Callahan,* 56 Cal. 159; *Worrall* v. *Munn,* 5 N. Y.

229; 55 Am. Dec. 330; Civ. Code, sec. 1741; Code Civ.
Proc., sec. 1971.) A deposit is considered as payment,
in part, of the purchase-money. (Sugden on Vendors,
8th Am. ed., p. 50, sec. 19.) The appellant has a lien
upon the land for the portion of the purchase price
which he paid. (Civ. Code, sec. 3050; *Chase* v. *Peck*, 21
N. Y. 585; Overton on Liens, sec. 640, p. 694; Pomeroy's
Eq. Jur., secs. 167, 1263.) As the vendor could give
neither title nor possession, the appellant was entitled,
at least, to recover the money paid. (*Sanders* v. *Lansing*,
70 Cal. 429.) The delivery of possession and the trans-
fer of title were to be simultaneous and concurrent with
the payment of the purchase-money. The conditions of
the contract were mutual and dependent,— "concur-
rent,"—within the meaning of section 1437 of the Civil
Code; and the vendor's giving possession was a condition
precedent to the vendor's right to insist upon a payment
of purchase-money. (Civ. Code, sec. 1439; *Hill* v.
*Grigsby*, 35 Cal. 661–663; *Stockton Savings & L. Soc.* v.
*Hildreth*, 53 Cal. 723; Pomeroy on Specific Performance,
sec. 336; *Powell* v. *Dayton S. & G. R. Co.*, 14 Or. 356.)
In contracts of this nature, time is deemed to be of the
essence of the agreement. (Sugden on Vendors, 8th Am.
ed., 257–259.) Failure to put appellant in possession
constituted a breach of the agreement, on the part of re-
spondent. (*Bigler* v. *Morgan*, 77 N. Y. 315, 318; *Morange*
v. *Morris*, 3 Keyes, 48; *Pryse* v. *McGuire*, 81 Ky. 606;
*Egbert* v. *Chew*, 14 N. J. L. 446; 2 Sutherland on Dam-
ages, 210, 211, note.) If unable to ·give the whole
amount of land, the law holds the vendor as utterly fail-
ing. (Pomeroy on Specific Performance, secs. 339, 366.)
The stipulation as to possession would not have been
satisfied by a mere attornment of the tenants, as attorn-
ment followed by operation of law. (Civ. Code, sec.
1111; Taylor on Landlord and Tenant, 7th ed., secs. 440,
442, 621.) As there was objection to the title, the pur-
chaser could not have taken possession, as such act would

be deemed an acceptance of such title. (Sugden on Vendors, 8th Am. ed., p. 7, par. 16, p. 343, par. 14; p. 630, par. 9.) The purchaser will not be forced to complete the contract unless the title is free from any reasonable doubt. (Pomeroy on Specific Performance, secs. 198, 199, 342, 347, note 1; Boone on Real Property, sec. 383.) The doubt may relate to the construction of deeds and other writings, which constitute the chain of title. (Pomeroy on Specific Performance, secs. 200, 203.) The vendee is entitled to have a paper title sufficient in law, and is not bound to accept a title resting on adverse possession. (*Hartley* v. *James*, 50 N. Y. 42.) If the seller offers a defective title, a formal tender and offer of payment and demand of a deed is not necessary to enable the purchaser to recover back what he has paid. (*Hartley* v. *James*, 50 N. Y. 43.) The purchaser is entitled to have a title which is clear and good on the record. (Pomeroy on Specific Performance, sec. 251, note 3; *Turner* v. *McDonald*, 76 Cal. 177; 9 Am. St. Rep. 189.) This action is purely equitable in its nature, and brings appellant under the rule that he who seeks equity must do equity. (*Brandt* v. *Wheaton*, 52 Cal. 430; *Hancock* v. *Plummer*, 66 Cal. 338; *Polack* v. *Gurnee*, 66 Cal. 267, 269; *Ballard* v. *Carr*, 48 Cal. 75; *Guttenberger* v. *Woods*, 51 Cal. 523.) Respondent's proper suit was to foreclose the right of appellant to purchase. And in such a suit the court would have been both obliged and able to adequately protect the vendee by its decree. (*Keller* v. *Lewis*, 53 Cal. 113.) If he had sought to rescind the contract of sale for the non-payment of the purchase-money, he could not have done so without restoring, or offering to restore, everything of value which he has received from appellant under the contract. (*Wilson* v. *Sturgis*, 71 Cal. 229; *Booth* v. *Hoskins*, 75 Cal. 276; Civ. Code, sec. 1691, subd. 2; *Gifford* v. *Carvill*, 29 Cal. 593; *Parks* v. *Evansville, I. & C. S. L. R. R.*, 23 Ind. 571; *Chandler* v. *Chandler*, 55 Cal. 269; *Cazara* v. *Orena*, 80 Cal. 132.)

*Edward J. Pringle,* for Respondent.

The stipulation that title should be satisfactory does not give to a vendee a license to reject the title from caprice or temper, or as a "mere pretext to get rid of the bargain." (1 Dart on Vendors and Purchasers, 145; *Beardslee* v. *Underhill,* 37 N. J. L. 310; *Lord* v. *Stebbens,* 1 Younge & C. 222–227; *Folliard* v. *Wallace,* 2 John. 402; *Kirkland* v. *Little,* 41 Tex. 456.)

Fox, J. — Action in form *quia timet,* or one brought under section 738 of the Code of Civil Procedure, for the purpose of determining the adverse claim of defendant to beach and water lot No. 717, San Francisco. Defendant denies that he asserts any claim to the lot, other than that which he derives under a certain contract with the plaintiff for the purchase thereof; alleges payment of one thousand dollars under said contract, with offer to fully perform on his own part, but inability and refusal to perform on the part of plaintiff; and in addition files a cross-complaint against plaintiff, demanding a return of said one thousand dollars, with interest, together with damages for non-performance on the part of plaintiff, and other relief. Findings and judgment for plaintiff; motion for new trial denied, and defendant appeals.

Respondent claims that the transaction between himself and appellant was not a sale, or contract for the sale, of the lot, but a mere sale of an option to buy the lot; that the one thousand dollars was paid for the option, and that defendant not having exercised the option, and made the purchase, the transaction is finally closed, and he, plaintiff, is entitled to have his title quieted, and and to retain the one thousand dollars. Defendant, on the other hand, insists that the transaction was a sale. The contract was in the words and figures following:—

"SAN FRANCISCO, September 7, 1883.

"Received from J. M. Shotwell one thousand dollars, being deposit on account of sale by me to him of beach

and water lot No. 717 [describing it], for the sum of sixteen thousand dollars ($16,000). Purchaser to pay the commission of two hundred dollars ($200) for selling, to Messrs. Moxley and Fisher. Purchaser to pay for paving crossing of Howard and Steuart streets, now being done, at an amount not exceeding one hundred and twenty dollars ($120). The seller to pay all other street-work now being contracted for or already done. Purchaser to pay taxes for current year 1883–84. Purchaser to have the rent of lot from and after September 1st. Possession of lot given and guaranteed to purchaser on transfer of title. Fifteen days given to purchaser for examination of title and making of deed. If title not satisfactory to purchaser, sale to be null and void, and above deposit returned to him.

"(Signed)                    John Benson.

"Witness: Charles C. Fisher."

The thousand dollars was paid simultaneously with the execution, delivery, and date of this paper. The fifteen days consequently expired on the 22d of September.

There is no question in our minds that this was a good and valid contract for the purchase and sale of the lot, the deposit to be returned in case the title did not prove satisfactory, or of inability on the part of the seller to comply with its terms. It comes fairly within the provisions of sections 1726 and 1729 of the Civil Code. It was signed by the party to be charged, and by the only party who was required to sign it. (Civ. Code, sec. 1741; *Fabian v. Callahan*, 56 Cal. 159.) The payment of the deposit by the other party was a sufficient acceptance of its terms, and by the express terms of the paper that payment was not, as claimed by respondent, for an option, but "a deposit on account of sale." For the amount of that deposit, the vendee had and has a lien upon the property, in case of failure on the part of the vendor to make good his part of the contract, unless the vendee is

himself first in default. (Civ. Code, sec. 3050; Pomeroy's Eq. Jur., secs. 167, 1263, and cases there cited.)

At or about the time of making the contract, respondent delivered to appellant an abstract of title, which appellant had revised and continued down to date at his own expense, and then placed it in the hands of a well-known examiner. On the 17th of September he received the report of his examiner, and immediately notified the respondent, in writing, of certain defects in the record title, calling his attention thereto, and as to one which seemed to be an important one, suggesting that possibly it arose from clerical error in the record, and asking for the original papers, that he might submit them to his counsel and examiner; also calling his attention to certain facts in regard to the occupancy and possession of the lot, and to the fact that "to avoid trouble and give undisputed possession, it will be necessary to oust them all." Receiving no response to this, appellant again wrote to the respondent, on the 19th, as follows: "I am waiting patiently your reply to my note of the 17th inst., referring to matters requiring your attention in clearing up title, etc., to water lot No. 717. If you will be kind enough to inform me where I can find you during business hours, and at what time, I will meet you. I wish to close up the business without further delay." After receiving this letter, respondent called, and claimed that he had the original of the deed to which exception was taken in the chain of title shown by the abstract, which, according to the record, was signed "Hopkins," but which he claimed was in fact signed "Hepburn," as it was required to be, in order to make the title correct; but he refused to let the appellant take it, to submit it to counsel, or to put it upon record. His attention was then also particularly called to the condition of the lot as to the matter of possession, but he took no measures to prepare himself for delivery of possession, as required by his contract. On the 22d of September, the day when

by the terms of the contract the transaction was to be closed, he sent his agent with his deed of the premises, and made a tender thereof, and demanded the remaining fifteen thousand dollars. Appellant counted out to him the money, and as he was about to put it in a bag and carry it away, appellant said: "Wait a minute, gentlemen, you must go down and put me in possession of the lot, and then you can take the money away," and added that upon receiving possession of the whole lot, and with the correction of the deeds, he was ready to complete the purchase.

The evidence given upon the trial shows the title from two sources: 1. An alcalde grant made January 3, 1850; 2. A deed from the California land commissioners dated August 26, 1854. In tracing the title down from the alcalde grant, it came into H. P. Hepburn. There, according to the records of the recorder's office, and as shown by the abstract, there was a complete break in the chain of title. The next deed in order of date was from H. P. Hopkins, and there was no deed of any date from H. P. Hepburn. It was admitted upon the trial, and so appears in the record, that the land is within the grant to the pueblo of San Francisco. If that is true, and it must be taken as true for the purposes of this case, here was a fatal defect in the record title. It could not be helped out by a good chain of deeds from the land commissioners down; for if the land was within the grant to the pueblo, the commissioners had no title to grant, and nothing was acquired or taken under their deed. It therefore became important that the connection should be complete with the alcalde title. According to the record, the plaintiff utterly failed to connect himself with that title. Under the contract, defendant was entitled to a good paper title, sufficient in law, and was not bound to accept a title resting upon the statute of limitations, or take the risk of determining, from facts which he might learn *de hors* the record, whether or not

the statute of limitations could be successfully pleaded against an adverse claim. (*Hartley* v. *James,* 50 N. Y. 42.) True, plaintiff claimed, and upon the trial proved, that the record was wrong, and that the deed purporting to be from Hopkins was in fact from Hepburn. But at the time when it was his duty to show good title, he allowed the matter to rest upon his naked assertion, and refused to submit his proof for examination, or to permit the deed to be recorded correctly. Defendant had a right, therefore, to stand by the record, and to govern his conduct accordingly.

Some other discrepancies in the chain of this title were also pointed out as defects, at the time, but they do not seem to have been seriously insisted upon, and, comparatively, at least, they were immaterial.

As to possession, the evidence shows that there were on the lot several tenements, a blacksmith-shop, a shoe-maker's shop, a stable, and several shanties, ships' cabins, and the like; that one or two of these tenements were occupied by persons attorning to the plaintiff, and paying a small monthly rental; that others of them were occupied by persons whose names even could not be learned,—persons sleeping there at night, and absent during the day, — the regular tenant claiming that they slept there by his permission, but he did not even know the names of some of them. Along the rear end of the lot, certain buildings, supposed to stand on the corners, and a fence running from one to the other of them, constituted the rear line of occupancy, but it was found, upon survey, that these buildings and this fence were inside the line of the lot one foot eight and a half inches, and that for at least twelve or thirteen years this strip had been so fenced *out* of this lot, and used and occupied by the tenants on the adjoining lot, which belonged to Mrs. Klumpke, then in Europe, with no agent here authorized to act for her in the matter of determining or deciding whether she claimed it or not. These

facts appear from the evidence, without substantial, and it seems to us without any, conflict.·

Under these circumstances, the defendant claimed and demanded that when he paid his money he should be given, not only a good paper title, but the actual possession of the lot, and of the whole lot. When demand was made, and the money counted out, plaintiff's agent sent some persons down with defendant to put him into possession, but the tenants said they could not give it; several of the small tenements were locked up, and the occupants absent, and the strip on the outside of the fence was completely covered, to a depth of several feet, with lumber belonging to the tenant of Mrs. Klumpke. The parties returned without a surrender of possession.

It is claimed, on the part of respondent, that the tenants who were under lease from plaintiff said while there that they would acknowledge the defendant as their landlord, and attorn to him, and that this was all that was required. But this was not the measure of plaintiff's obligation, according to the letter of his bond. According to that paper, defendant was entitled to an actual *possessio pedis* of the whole lot. The language of the contract implied nothing less. Constructive possession, and the duty to attorn, would follow the title; and if that was all that was meant, there was no need to have said anything about possession in the contract. But in that instrument it is expressly provided that the possession of the lot is to be both "given and guaranteed to purchaser on transfer of title." Nor is this relieved or modified by the other provision, that he is to receive the rent from and after September 1st. That assures him, in case the contract is ·carried out, the rent from a day anterior to the date of the contract, but does not bind him to take the lot with all its encumbrances at the time of final completion of the terms of the agreement. Besides, this proposed attornment was from only two or three of the many occupants of that lot. The others knew no land-

lord, and were unknown to any.   Their tenements were
locked up, and access to them could not be had without
a violation of law.   Still more, as to an important por-
tion of the lot it was certain that an adverse right had
grown up, which, if asserted, would defeat the title as to
that portion, and it was not known then, or even at the
time of this trial, whether it would be asserted or not.

By the terms of the contract, delivery of possession
and the transfer of title were to be simultaneous, and
both were to be concurrent with the payment of the
money.   The conditions of the contract were mutual and
dependent,   concurrent,   within the meaning of sec-
tion 1437 of the Civil Code.   Under it, respondent was
not entitled to demand payment of the money until he
delivered that possession.   (Civ. Code, sec. 1439; *Hill* v.
*Grigsby,* 35 Cal. 661–663; *Stockton Sav. etc. Soc.* v. *Hildreth,*
53 Cal. 723.)   The word "possession," as used in this con-
tract, is to be understood and construed in its ordinary
and popular sense.   (Civ. Code, sec. 1644.)   According
to the uncontradicted evidence, appellant offered to per-
form according to the strict letter of the contract.   (Civ.
Code, secs. 1437, 1498.)   And no objection was made to
the mode of such offer.·   (Civ. Code, sec. 1501.)   Noth-
ing which transpired afterwards met the measure of his
rightful demand.   The subsequent written surrender of
possession to plaintiff by his tenants, which was after-
wards shown to defendant, did not meet the calls of the
contract.   It was a mere statement of surrender, not
accompanied or followed by an actual surrender, and, as
before stated, was from only a portion of the actual occu-
pants.

The court found in favor of plaintiff, and against de-
fendant, on all these questions of performance and offers
to perform on the part of the respective parties.   With-
out specifying them separately, we think the findings
upon these questions are clearly against the evidence,
and that the evidence on the subject is without substan-

tial conflict.  The case must therefore go back for a new trial, and it remains only to consider the points made on the questions of remedy and relief.

Appellant, although not appearing to be in default, has not asked for specific performance.  Respondent has not chosen to bring his action to rescind, but rather seeks to quiet title.  If he had sought to rescind, appellant not being in default, respondent would not have been entitled to that relief until he had restored all that he had received under the contract.  (Civ. Code, sec. 1691; *Wilson* v. *Sturgis,* 71 Cal. 221, and cases there cited; *Booth* v. *Hoskins,* 75 Cal. 276; *Cazara* v. *Orena,* 80 Cal. 132.)  He cannot avoid this obligation by coming into equity to quiet his title.  The complaint in this case must be treated as a bill in equity.  (*Brandt* v. *Wheaton,* 52 Cal. 430; *Hancock* v. *Plummer,* 66 Cal. 338.) This action has always been held to be on the equity side of the court.  (*Polack* v. *Gurnee,* 66 Cal. 267–269.) He who asks equity must do equity.  (*Ballard* v. *Carr,* 48 Cal. 75; *Guttenberger* v. *Woods,* 51 Cal. 523.)  Under this contract and this evidence, plaintiff cannot come into a court of equity, and ask to quiet his title against the claim of defendant, without restoring the money he has received.  (*Chandler* v. *Chandler,* 55 Cal. 269.)  The real subject of controversy here is the contract of sale, and the rights of defendant thereunder.  The judgment must necessarily adjudicate those rights, and will pass only incidentally upon plaintiff's title.  (*Parnell* v. *Hahn,* 61 Cal. 131.)  It may be that respondent can make good title, but he did not at the time show good record title; was unable to put his vendee in possession, and has never yet shown that his title, even if good paper title, has not been defeated as to a part of the lot by adverse possession.  Under such circumstances, the appellant was entitled to recover the money paid.  (*Sanders* v. *Lansing,* 70 Cal. 429.)

It is suggested that we can order a modification of the

judgment, requiring plaintiff to repay to defendant the sum of one thousand dollars, with interest thereon from September 22, 1883, and that thereupon plaintiff's title be quieted. On the evidence, such a judgment would seem to be equitable between the parties, but it would not be supported by the findings as they now stand, and this court cannot make findings for the court below. If in the court below the parties shall consent to so adjust their differences, no doubt the court will facilitate them in so doing. All that we can do is to order that the judgment and order appealed from be reversed, and it is so ordered.

PATERSON, J., McFARLAND, J., SHARPSTEIN, J., and THORNTON, J., concurred.

WORKS, J., concurring. — I concur in the judgment, on the ground that possession was not given as provided in the contract. I do not concur in the conclusion reached, that a good title was not shown. The respondent showed, by producing his deed, that the record was incorrect, and that the deed was made by the proper party. This was done on the day the contract was to be consummated, and was sufficient. Besides, it was satisfactory to the appellant, as he only required, as a condition upon which he was willing to pay the purchase-money, that possession of the property be given him.

Rehearing denied.