[L. A. Nos. 1510, 1518. Department One.—March 9, 1907.]

## ANNIE J. PIERCE, Appellant, v. HANNAH M. EDWARDS, Respondent, and HIRAM C. PIERCE, Appellant.

VENDOR AND VENDEE—COVENANT TO DELIVER ACTUAL POSSESSION.—A written contract for the sale and purchase of real estate by the terms of which the vendor agrees to sell the land to the vendee for a specified sum and "to deliver" the same by a specified date, and the vendee agrees "to take" the land and pay the specified sum, imposes the obligation on the vendor to put the vendee in the actual physical possession of the land, and until such possession is tendered the vendee is not in default.

ID.—LAND IN POSSESSION OF TENANTS—WRITTEN CONTRACT CANNOT BE VARIED BY CONTRADICTORY ORAL UNDERSTANDING—PLEADING.—In an action by the vendor to recover damages for the breach of such contract, allegations in the complaint that the writing was not intended to and did not embrace all the details of the contract, and that it was agreed between the parties as a part of the contract that the tenants on the land should remain and become tenants of the vendee, must be construed most strongly against the pleader, and it must be inferred that the land was in the possession of tenants and that an actual delivery thereof was not tendered to the purchaser. The facts so alleged did not obviate the necessity of an actual delivery of possession by the vendor, as the written contract, expressly requiring such delivery, could not be added to or varied by a contemporaneous oral understanding in direct contradiction thereof.

ID.—AGREEMENT OF TENANT TO ATTORN TO PURCHASER.—In such action an allegation by the vendor, that at the time of the contract the premises were leased to a designated person, "who consented and agreed to and with the vendee to become and be the tenant of the vendee on said premises," is not sufficient to avoid the necessity of an actual delivery of possession by the vendor, there being no allegation that such agreement of the tenant was a part of the contract between the vendor and vendee, or that the purchaser agreed to accept such person as her tenant; and the vendor, not being a party to such agreement, cannot take advantage of it for the purpose of relieving himself from the failure to perform the stipulations of his contract.

ID.—KNOWLEDGE BY PURCHASER OF POSSESSION BY TENANTS.—The fact that the purchaser knew at the time of the contract that the land was in the possession of tenants cannot be considered in construing the contract so as to make the obligation to deliver merely an obligation to deliver the land in the condition in which it was,—that is, as subject to lease and in the possession of tenants.

APPEALS from judgments of the Superior Court of Santa Barbara County. Felix W. Ewing, Judge presiding.

The facts are stated in the opinion of the court.

W. S. Day, and B. F. Thomas, for Appellants.

H. P. Starbuck, and Canfield & Starbuck, for Respondent.

SLOSS, J.—The plaintiff, Annie J. Pierce, brought this action to recover damages for the breach, by the defendant Hannah M. Edwards, of a contract whereby said Hannah M. Edwards agreed to buy of the co-defendant, Hiram C. Pierce, a certain tract of land. The plaintiff sought to establish a cause of action in herself by alleging that Hiram C. Pierce, who was her husband, had taken title to the land under circumstances which, as she claims, made him a constructive trustee for her, and accordingly entitled her to receive the fruits of any contract made by him respecting the land. Hiram C. Pierce answered, denying the facts on which the claim of a trust relation is based, and filed a cross-complaint in which he sought, on his own behalf, to recover damages from Mrs. Edwards for breach of the contract of purchase. In effect, therefore, the Pierces were separately, as plaintiffs, seeking to recover from Mrs. Edwards damages for the alleged breach of the same contract.

Demurrers of Mrs. Edwards to a second amended complaint of plaintiff and to an amended cross-complaint of defendant Hiram C. Pierce were sustained, and further amendment being waived, judgments · were entered in favor of Mrs. Edwards against the plaintiff and against the defendant Hiram C. Pierce. From these judgments, respectively, the plaintiff and the defendant Pierce appeal.

The only question that need be considered here is whether either the complaint or the cross-complaint demurred to, states a cause of action against Mrs. Edwards. Omitting the allegations which are inserted in the said complaint for the purpose of showing the plaintiff's right to enforce the contract, the two pleadings in question contain a number of allegations in common. Thus each sets out in full the contract relied on, which was in writing, and reads as follows:—

"SAMUEL EDWARDS
"ORCHARD FARM
"SATICOY, VENTURA CO., CAL., March 24, 1902.
SANTA BARBARA, CAL.

I, Hiram C. Pierce, agree to sell to Mrs. Samuel Edwards my ranch in the Santa Ynez Valley called 'San Lucas Rancho' for the sum of thirty-five thousand dollars, $35,000 Cash—and I hereby agree to deliver said Rancho to Mrs. Samuel Edwards by the first of May—said Rancho consists of Tracts A & B of the subdivision of the Rancho 'Lomas de la Purificota'; and Mrs. Samuel Edwards agrees to take said rancho and pay the above sum.

"HIRAM C. PIERCE.
"ANNIE J. PIERCE.
"HANNAH M. EDWARDS."

(The "Mrs. Samuel Edwards" named in this writing is the defendant Hannah M. Edwards.)

It is alleged in both the second amended complaint and in the amended cross-complaint "That said memorandum of contract was not intended to and did not embrace all the details of the contract." It is also alleged that at the time the contract was made the property was subject to a trust-deed to secure indebtedness and to two mortgages. Both the second amended complaint and the amended cross-complaint contain an allegation that on the first day of May, 1902, the plaintiff (cross-complainant) tendered to the defendant Hannah M. Edwards a good and sufficient deed of the premises, a duly executed reconveyance releasing the trust-deed, and good and sufficient releases of the mortgages, and that said defendant refused to accept said tenders or to pay the said sum of thirty-five thousand dollars. There is no allegation in either pleading under consideration that delivery or possession of the property was tendered to Mrs. Edwards.

We are of opinion that under the contract above quoted the purchaser was entitled to be put in the actual possession of the ranch, and that until such possession was tendered her she was not in default.

That the contract provides for a delivery of possession as well as a transfer of title is, we think, obvious from a mere reading of its terms. The vendor agrees to sell the ranch

for. the sum of thirty-five thousand dollars and agrees "to deliver said rancho to Mrs. Samuel Edwards by the first of May." The purchaser agrees to take the rancho and pay the above sum. If the agreement had contemplated merely a transfer of the title in consideration of the payment of a certain sum, it would not have been necessary to say anything more than that the vendor agreed to sell the ranch and the purchaser agreed to pay the specified sum. The parties, however, inserted the additional clause binding the vendor "to deliver" the property at a certain time, and binding the vendee "to take" said property. The obligation assumed by the vendor to deliver the property as used in this connection cannot be taken to mean anything else than an obligation to turn over the actual physical possession. The case is very similar to *Benson* v. *Shotwell*, 87 Cal. 49, [25 Pac. 249]. In that case there was a contract of sale which contained these words: "Possession of lot given and guaranteed to purchaser on transfer of title." It was held that under this contract the purchaser was entitled not only to a transfer of title, but to a delivery of possession before being called upon to make his payment. The court said: "The word 'possession,' as used in this connection, is to be understood and construed in its ordinary and popular sense." While in the contract here under consideration we do not find the word "possession," we think the language here used—i. e. an agreement to deliver the rancho—is to be interpreted as requiring a delivery of the physical possession.

Both the plaintiff and the cross-complainant in framing their pleadings saw the force of this point and sought to evade it by further allegations.

The plaintiff alleges in her second amended complaint, as has been stated, that the written instrument was not intended to and did not embrace all the details of the contract, and avers that "It was also stipulated and agreed between the parties and as a part of said contract that the tenants on said land should remain and become the tenants of the purchaser, Hannah M. Edwards." Under the well-established rule requiring pleadings to be construed most strongly against the pleader, it must be inferred from this allegation that the land *was* in the possession of tenants, and that an actual delivery thereof was not tendered to the purchaser. Did this

clause obviate the necessity of such actual delivery? We think not. "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." (Civ. Code, sec. 1625.) "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives . . . no evidence of the terms of the agreement other than the contents of the writing." (Code Civ. Proc., sec. 1856.) And these sections declare a rule of law so long and so well established that it is needless to cite further authority in its support. It is true that there is an exception to this rule; that it does not apply where the parties have not incorporated into the instrument all of the terms of their agreement (*Guidery* v. *Green*, 95 Cal. 630, [30 Pac. 786]; *Sivers* v. *Sivers*, 97 Cal. 518, [32 Pac. 571]; *Savings Bank* v. *Asbury*, 117 Cal. 96, 103, [48 Pac. 1081]), and the plaintiff has sought to bring herself within this exception by her allegation that the memorandum of contract "was not intended to and did not embrace all the details of the contract." But the exception allowing oral evidence of terms of an agreement not included in a writing is itself subject to the qualification that the oral stipulations sought to be proved are not inconsistent with the terms embraced in the writing. (*Guidery* v. *Green*, 95 Cal. 630, [30 Pac. 789]; *Sivers* v. *Sivers*, 97 Cal. 518, [32 Pac. 571]; *Savings Bank etc.* v. *Asbury*, 117 Cal. 96, 103, [48 Pac. 1081].) Here the contemporaneous understanding relied upon is directly in conflict with the terms of the writing. By the writing the parties agreed to deliver the property, an agreement which means, and can mean only, that they were to transfer the actual possession. An agreement that the possession was not to be transferred and that the persons in possession should hold under the vendee, instead of under the vendor, is not an addition to the terms of the writing, but a direct contradiction of them. The following language from the decision in *Benson* v. *Shotwell*, 87 Cal. 49, [25 Pac. 249], illustrates the divergence between the written instrument and the asserted additional understanding: "It is claimed on the part of respondent, that the tenants

who were under lease from plaintiff said while there that they would acknowledge the defendant as their landlord, and attorn to him, and that this was all that was required. But this was not the measure of plaintiff's obligation, according to the letter of his bond. According to that paper, defendant was entitled to an actual *possessio pedis* of the whole lot. The language of the contract implied nothing less. Constructive possession, and the duty to attorn, would follow the title; and if that was all that was meant, there was no need to have said anything about possession in the contract." So here, if the contract had said nothing about delivery, the mere transfer of the title would have entitled the grantee to receive the rents from the tenants. (Civ. Code, sec. 1111.) To allow any force to the stipulation that the tenants on the land should become the tenants of the purchaser would be equivalent to striking from the contract the provision that the vendor agreed to deliver the rancho to the vendee by the 1st of May.

For these reasons we think that the second amended complaint failed to state a cause of action against the defendant Edwards, and it is therefore unnecessary to consider the further point made by the respondent, that the facts averred were insufficient to show a constructive or resulting trust in the contract in favor of the plaintiff.

The allegations of the amended cross-complaint are somewhat different. There is no averment of an agreement by the vendee to accept any of the tenants as her tenants. In this behalf the cross-complainant alleges merely "that said premises were leased at the time to one Newel Kane, who consented and agreed to and with said Hannah M. Edwards to become and be her tenant on said premises." If the construction heretofore given to the writing be correct, this cross-complaint comes even more clearly than the complaint within the reasoning of *Benson* v. *Shotwell*, 87 Cal. 49, [25 Pac. 249]. It is not alleged that this agreement of the tenant was a part of the contract between Hiram C. Pierce and Hannah M. Edwards. All that is said is that the tenant in possession of the land undertook to acknowledge the purchaser as his landlord. But this was not sufficient. The purchaser was entitled to actual possession, and since the cross-complaint not only fails to allege a delivery of such possession, but shows

affirmatively that the possession was in the third party, no cause of action is stated. It is claimed that the matter alleged shows a waiver by the purchaser of actual delivery, but this cannot be. It is not alleged that such purchaser agreed to accept Kane as her tenant. The most that can be said is that Kane agreed to become her tenant—a thing which, as we have seen, he would under the law have been obliged to do without any agreement. Again, the vendor was not a party to any such agreement and cannot take advantage of it for the purpose of relieving himself from the effect of failure to perform the stipulations of his contract.

It is suggested that the fact that the purchaser knew at the time she made her contract that the property was in the possession of tenants should be considered in construing the contract so as to make the obligation to deliver merely an obligation to deliver the land in the condition in which it was,—i. e. as subject to lease and in the possession of tenants. But we see no force in this. The same argument would lead to the result that an agreement to sell land which is known by the purchaser to be subject to certain encumbrances requires the purchaser to take and pay for the land, notwithstanding such encumbrances. The purchaser, knowing that the land was in the possession of third parties, stipulated for its delivery to her. She is entitled to stand upon this stipulation, which may have been insisted upon for the very reason that she knew of the tenancies. The contract bound the seller to terminate the tenancies, or in some other way place himself in position to comply with his undertaking to deliver the rancho by the 1st of May.

Each of the demurrers was properly sustained. The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.