## BATES v. LOFFLER et al.

Great delay in the settlement of the bill of exceptions is not ground for striking the bill from the record on appeal, where the trial court did not abuse its discretion in settling the bill, and where it never lost jurisdiction.

The error occasioned by omitting from the bill of exceptions as settled by the court necessary and material evidence cannot be corrected by motion to strike the bill, instead of a proceeding to perfect the bill.

The insufficiency of assignments cannot be presented to the Supreme Court on a motion to strike the bill of exceptions from the record.

The Supreme Court may not dismiss an appeal and affirm the judgment merely because the bill of exceptions is fatally defective, since other questions based on other parts of the record may be reviewable.

Where respondent failed to urge his motion to strike the bill of exceptions until about six months after the expiration of the time for filing his brief, the court, on denying the motion, will not allow him time to prepare and file a brief on the merits.

Where the trial of a suit by a vendor of to quiet title against the purchaser, who had paid a part of the price, was had after all payments, except the last, were due under the contract, and the vendor, recognizing the equitable rights of the purchaser, did not plead or prove any damages resulting from the purchaser's breach of contract, the court must fix a reasonable time within which the purchaser might pay the unpaid price, and receive a deed, and in default foreclose his rights.

In a suit by a vendor to quiet title against joint purchasers, evidence **held** to show that none of the purchasers were intentionally

in default, justifying the granting to them of the right to pay the unpaid price within a reasonable time and obtain a deed; the vendor not beng damaged by the default of the purchasers.

Where relief prayed for cannot be decreed under the findings of the trial court, the Supreme Court may not make new findings to justify such relief.

(Opinion filed, November 14, 1911.)

Appeal from Circuit Court, Pennington County. Hon. Levi McGee, Judge.

Action by Albert E. Bates against Gilbert D. Loffler and others. From a judgment for plaintiff, defendants appeal. Modified and affirmed.

*John Holman, Joseph Janousek, Harry Kunkle* and *H. R. Horner,* for appellants. *Charles W. Brown,* for respondent.

WHITING, J.   The plaintiff herein brought action seeking to quiet title in some 1,600 acres of land situate in Pennington county, S. D.   His complaint is the short form prescribed by statute.   The defendants Gamble, Tripp, and Ohlman joined in an answer, and pleaded an interest in the said land under and by virtue of a contract entered into by themselves and their co-defendant, whereby the defendants contracted to purchase, and plaintiff to sell, the said land in question.   The defendants, after pleading the contract, allege the payment of a large sum of money thereunder, and that the further performance of the contract upon their part was excused by the plaintiff's failure to perform his covenant contained in said contract, namely, to clear the title to said land from incumbrances and clouds thereon.   Said defendants asked for the recovery of the money paid by them on the contract, and for damages suffered by them in examination of title to said land.   The defendant Loffler, by his separate answer, pleaded facts practically the same as his codefendants, and, in addition, pleaded certain damages through plaintiff's failure to carry out the contract.   The plaintiff, replying to said answers, admitted the execution of contract and the payment by defendants of a certain sum thereunder, though not the amount claimed by defendants. Under the contract, plaintiff had agreed to furnish abstracts showing a clear and unincumbered title to the lands; and he pleaded

that said contract was afterwards modified, so that he was allowed to pay off a certain mortgage standing against said land from money to be received by him on the first and second deferred payments to be made under said contract. Plaintiff alleged that, excepting the showing of such mortgage incumbrance upon the abstracts, he had in all ways fulfilled the contract, and that defendants had wholly failed to live up to said contract, and that defendants had repudiated said contract and attempted to rescind same. Plaintiff in his reply said that he tendered and brought into court, for the purpose of delivery to the defendants, a good and sufficient warranty deed executed by himself, and conveying said land to defendants as well as abstracts showing perfect title in plaintiff with the exception of the mortgage above referred to. Plaintiff asked that a short time be given defendants within which to make the further payments provided by the contract, and that the court direct that the mortgage incumbrance be paid out of the money so paid into court by defendants, or, if the court so elected, plaintiff offered that he would immediately pay such incumbrance from his other funds. The cause was tried to the court without a jury. Findings of fact and conclusions of law were entered in favor of plaintiff. Upon these findings and conclusions a decree was entered quieting title to the lands in the plaintiff with judgment for costs against the defendants and without any provision for repayment to defendants of any part of the purchase money paid by them. The defendants moved for a new trial, which motion having been denied, they have appealed to this court, from the judgment of the trial court and from the order denying a new trial.

The respondent in his brief filed in this court under date of October 10, 1910, noted the fact that he intended later to move to strike from the record the purported bill of exceptions filed herein; but it was not until immediately preceding the April, 1911, term that respondent did make any such motion. Such motion was made returnable on the first day of such April term. In said motion the respondent prayed "for an order and decision that the alleged bill of exceptions, settled and allowed by the court, and transmitted to this court, be stricken from the record; that the said

case and this appeal be not heard upon the merits upon the records as here and now presented for want of necessary and material evidence and exhibits omitted from said alleged bill; that the appellant's assignments of error be held to be insufficient to present any question to this court for review; and that the judgment of the court below be in all things affirmed, and for such other and further relief in the premises as may be just and proper."

[1-4] As a ground for striking the bill from the records, respondent contends that the trial court lost jurisdiction to settle the bill, owing to delays and the court's failure to grant extensions of time for settling bill. While there was great delay in the settlement of the bill, we think there was no abuse of discretion on the part of the trial court in the settling of said bill, and that it never lost jurisdiction so to do. If there was "necessary and material evidence" omitted from the alleged bill of exceptions, the respondent has certainly mistaken his remedy, if he thinks such error should be corrected through a motion to strike the bill, instead of some proceeding looking to the perfecting of such bill. The insufficiency of assignments cannot be presented to this court upon such a motion, and, moreover, respondent should certainly recognize the fact that, even should the bill of exceptions be fatally defective or be stricken from the record, this court would not be warranted in dismissing the appeal and affirming the judgment of the trial court, as there might be questions, to be considered by this court upon an appeal, based upon other parts of the record than that found in the bill of exceptions. We do not believe that there is anything that would justify a refusal upon our part to recognize the bill of exceptions now on file herein, unsatisfactory though it is in many respects.

[5] The respondent has devoted a large part of his brief to a discussion of matters of practice including such motion to strike out the bill of exceptions, and in such brief he suggests that, in case the court should rule against him upon said questions of practice, he would desire further time to present a brief upon the merits of the cause. He refers to the fact that in a prior cause,

wherein his present counsel moved that a bill of exceptions be stricken from the record, this court issued an order extending the time for filing a brief upon the merits of the cause until after the decision upon the motion to strike the bill of exceptions. If respondent, before filing any brief in this court, had attacked the bill of exceptions by proper motion, and, owing to the pendency of such motion, had asked for an extension of time within which to file such brief, his request would undoubtedly have been granted; but, instead of so doing, he neglects to urge his motion until some six months after the time has expired, during which, under the rules of this court, his brief should be filed in this court. For this court to now allow respondent time within which to prepare and file a brief which he should have prepared months ago would certainly be a rank injustice to these appellants, and would establish a precedent which, if followed, would result in those delays which this court is earnestly endeavoring to avoid. We are inclined, in view of the merits of this case as such merits clearly appear upon the record herein, to think that respondent is relying, and must of necessity solely rely, upon his motion to strike out the bill of exceptions and upon certain other questions of practice discussed in his brief, realizing full well that upon the merits he can have no hope of sustaining the judgment of the trial court.

Respondent has questioned the sufficiency of the assignments of error, and of the specifications of the particulars wherein the evidence is claimed insufficient to sustain certain findings of the trial court, as such assignments and specifications appear in the bill of exceptions used upon motions for new trial and in the abstract on file in this court, and it must be conceded that such assignments and specifications are not as full and clear as good practice might require, but yet we think the same sufficient to fairly present for our consideration certain alleged errors of the trial court. Disregarding such purported findings of fact as are in fact mere conclusions of law, the record shows that the trial court and in brief as follows:

That plaintiff was the fee owner of the land at all times hereinafter mentioned; that the defendants claim an interest therein

adverse to plaintiff; that on or about July 30, 1907, the parties hereto entered into the following contract:

"This contract made this 24th day of July, A. D. 1907, by and between Albert E. Bates, of the county of Pennington and state of South Dakota, party of the first part, and Gilbert D. Loffler, Robert J. Gamble, Robert B. Tripp, and J. W. Ohlman, of Yankton county, South Dakota, parties of the second part, witnesseth: That the party of the first·part hereby agrees to sell, and do sell, to the parties of the second part, and the parties of the second part hereby agree to buy from the party of the first part, the following described real estate situate in the county of Pennington, and the state of South Dakota, and described as fol-, lows, to-wit: [Here follows a description of land.] The agreed purchase price of said land is seventeen thousand six hundred dollars ($17,600.00) which the parties of the second part agree to pay to the party of the first part as follows, to-wit: $3,200.00 upon the execution and delivery of this contract and agreement. $4,800.00 on or before the first of December, 1907, with interest at 6 per cent. per annum from date. $4,800.00 on or before March 1, 1908, with interest at 6 per cent. per annum from date. $4,800.00 on or before three (3) years from the date of this contract with interest at the rate of 7 per cent. per annum from date.

"It is further agreed that the party of the first part shall forthwith, and at his expense, furnish and deliver to the parties of the second part an abstract of title to each of the 160-acre tracts, or less amount of land, of the premises above described showing a perfect title in all the lands covered by this contract and agreement, clear and free of all incumbrances except taxes thereon for the year 1907, which taxes the parties of the second part agree to pay, and also subsequent taxes duly assessed against said property.

"It is further agreed that the party of the first part will upon demand, at any time within three years from the date of this contract, execute and deliver to the parties of the second part a good and sufficient warranty deed for the whole or any part of said land provided the parties of the second part shall at the time of

receiving said deed or deeds have paid or pay to the parties of the first part at least $11.00 for each and every acre of lands then or previously conveyed by deed by the parties of the first part to the parties of the second part.

"It is the intention of the contract and agreement that the parties of the second part must pay for and receive deeds for all of said lands within three years, or at the expiration of three years from the date of this contract, and that they may receive a deed or deeds to all or any part of said lands at any time before the expiration of said three years upon paying for the lands so deeded at least $11.00 per acre.

"It is further mutually understood and agreed by and between the parties to this contract that in case of any sale or sales by the parties of the second part of all or any tracts of land hereinbefore mentioned and covered by this contract that the cash payment received thereon as a part of the consideration thereof on said sale shall be paid over by said parties of the second part to the parties of the first part, and the same shall be applied on this contract and credited upon the first deferred payment falling due thereafter. (And any note or notes or mortgage that may be received and taken by the parties of the second part on any tract or tracts of land covered by this contract as a part consideration of the sale thereof shall be assigned and turned over by the said parties of the second part to the parties of the first part, and the amount thereof shall be indorsed and credited upon the last payment specified in this agreement, provided that said mortgages or mortgage shall not exceed in amount two-thirds of the purchase price of any of the said tract or tracts, and that the same shall draw interest at 7 per cent. per annum payable annually. Attached to and made a part of this contract by permission of Albert E. Bates, party of the first part, and G. D. Loffler, representing the parties of the second part. Signed, sealed, and delivered in my presence this 30th day of July, 1907. Albert E. Bates. G. D. Loffler, Almer E. Weeks. [Seal.] Notary Public, S. D.)

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written. Witnesses.

Victor T. Jepson.   [Signed by] Albert E. Bates.   [Seal.]   Gilbert D. Loffler.   [Seal.]   Robert J. Gamble.   [Seal.]   Robert B. Tripp.   [Seal.]   J. W. Ohlman.   [Seal.]"

That the plaintiff duly performed all the conditions of the contract upon his part.  That defendants Gamble, Tripp, and Ohlman paid $1,600 on said contract on or about July 30, 1907.  That the defendants have never paid any further sum, and have wholly refused and neglected to perform or comply with said contract in any particular, and on October 31, 1907, wholly repudiated the said contract and notified plaintiff they would not perform the same, and made, or attempted to make, a rescission thereof.  That plaintiff furnished abstracts of title showing perfect title in him, with exception of one mortgage securing debt of $8,000.  That defendants returned the abstracts claiming sundry alleged defects therein, and asking that such defects be cured.  That thereafter, and before October 25, 1907, the plaintiff caused all such alleged defects to be cured, and delivered to defendants abstracts showing perfect title other than the said mortgage incumbrance.  That on or about October 31, 1907, defendants returned the abstracts with the written opinion of attorneys to effect that all defects in title had been removed except said mortgage and accompanied such letter with a notice repudiating contract and attempting its rescission.  That at time of making contract, and subsequently thereto, it was understood and agreed that the said mortgage incumbrance could be paid out of the purchase money to be paid under said contract, and need not be satisfied of record until after the making of the third payment.  That defendants expressly waived any objection to said title owing to such mortgage.  That defendants' objections to said titles and abstracts, and that said notice of rescission, were not made in good faith, but were made for the reason that defendants were unable or unwilling to make the payments called for by said contract.  That immediately upon receipt of the notice of rescission, to-wit, on November 8, 1907, plaintiff gave defendants prompt notice that he had been performing and intended to perform the contract, and would insist upon performance by defendants.  That plaintiff, at same time, notified defend

ants that it was understood and agreed that the mortgage could be paid out of the purchase money, but that, nevertheless, if the existence of the mortgage was an injury to defendants, he would have it immediately satisfied and released, and that any other alleged defects would be cured within the time provided by contract if same were not already cured. That no demand was ever made for the release of said mortgage. That plaintiff brought into court abstracts showing perfect titles to said lands in plaintiff, excepting such mortgage, and also a sufficient deed of warranty to be delivered to defendants upon their complying with said contract within a time to be fixed by the court. That plaintiff stipulated in court that the mortgage could be paid from the said purchase money, or plaintiff would immediately pay the same out of his own funds. Then followed a finding relating to defendant Loffler's claim for damages, but which in the view we take of the case becomes immaterial.

Upon these findings the court concluded that defendants were not entitled to any relief whatsoever, and, without even giving them an opportunity to pay up the balance due under the contract and take the deed, the learned trial court entered a decree quieting title in plaintiff and giving plaintiff judgment for costs.

[6] The trial was had after all payments except the last were due. It must be remembered that the plaintiff was seeking in a court of equity to have his title quieted as against defendants, and it appears from his own pleadings and from the trial court's findings herein that he recognized the equitable right of the defendants to still come into court and pay the balance due under the contract, and then receive a conveyance of the land. We are unable to understand upon what principle of equity the trial court founded its decree wherein, instead of granting defendants an opportunity to comply with said contract, it entirely disregarded any right on their part, even such as it is apparent were conceded by plaintiff, and deprived them of any right or equity in said land under their contract, while refusing to direct the refunding of the money paid by them. It is clear to us that, even under the findings of the court, instead of keeping from the defendants a

large sum of money which it is conceded had been paid by them in good faith, and allowing it to be kept by one who had shown no damages suffered through defendants' breach of contract, the court should have fixed, as suggested by plaintiff himself, a reasonable time within which the defendants might pay the remaining part of the purchase price and receive the deed to said land, with the further provisions that, in case of failure to pay the balance of said purchase price, defendants be foreclosed of any right in said lands. That under these findings as made by the court, if the contract is to be treated as rescinded, the judgment should be for the return of the money received by plaintiff less any damage he may have suffered. See Gilbreth v. Grewell, 13 Ind. 484, 74 Am. Dec. 266; Way v. Johnson, 5 S. D. 237, 58 N. W. 552. Plaintiff neither pleaded nor proved any damage. That in case plaintiff did not seek the enforcement of the contract by suing for balance due thereunder, but sought rather to hold the land and foreclose defendants of their rights therein under the contract, the judgment should have been that conceded by the plaintiff in his reply, to-wit, a decree requiring payment of balance due within a reasonable time, and providing that, in default of such payment, the defendants be foreclosed of their equity in said lands. See Button v. Schroyer, 5 Wis. 598; Benson v. Shotwell, 87 Cal. 49, 25 Pac. 249; Schaeffer v. Hofmann, 37 Pac. 932.

We do not want to be understood as holding that the findings of the trial court are sustained by the evidence. We are unable to discover one word of evidence sustaining many such findings.

[7] These facts seem to us to be shown beyond all possible question of doubt: Bates agrees with Loffler to sell this land for $10 per acre. Loffler represented to his codefendants that he had the sale of this land at $11 per acre, and induced them to join with him in the purchase thereof at that figure, the other defendants to pay him a commission of $500 for his services in procuring such land. Loffler had made some sort of an agreement with two certain firms of land agents by which the extra $1 per acre should apparently be paid, but should go through them, one half retained by one of these firms and the other half returned to him. Each

defendant gave his check for. $800 to cover first payment, and all the defendants except Loffler fully believed that the whole $3,200 was to go, and did go, to Bates, and it was not until after this suit was brought that the three defendants were advised of the true facts. Bates in receiving the $1,600 got all he was to receive from the said $3,200, and in signing the contract, in form it was, knew that the selling price was padded $1 per acre. The contract shows that the purchasers contemplated reselling the land as soon as possible by selling in small tracts, and hence shows necessity of unincumbered title. No valid agreement that the $8,000 mortgage could be paid out of the deferred payments was ever entered into, but there is sufficient evidence to show that, after the contract hereinbefore quoted had been signed by all parties and delivered, Loffler, without any authority from his copurchasers and wholly without their knowledge, assured Bates that it would be all right for him to let the mortgage remain unpaid until such deferred payments were made. Loffler denies any such statement, and the statement, if made, was merely an oral assurance made after the written contract had come into full effect, and was furthermore, wholly without consideration, and of no legal validity even as against Loffler. Loffler's codefendants knew nothing about this alleged agreement until after they attempted to rescind the contract. There is not one word of evidence to show but what defendants intended and desired to carry out the contract by meeting the payments when they fell due, providing they were furnished a perfect title to the lands. Bates proceeded diligently to perfect the title, except that, relying upon Loffler's statement, he did not pay up the mortgage. There was at least one defect in the title, other than the mortgage, not cured at time defendants attempted to rescind.

It is therefore clear that, with the exception of defendant Loffler, none of the parties hereto were in any wise acting except in the best of good faith, and none of them were knowingly or intentionally in default.

[8] Defendants have prayed a recovery of money paid by them. This could not be decreed under the findings of the court,

and we cannot make new findings. Defendants, however, further urge in this brief that, in case this court cannot direct judgment in accordance with their answer, it direct a modification of the judgment of the trial court, to the end that they be granted the equities to which plaintiffs' reply concedes them entitled. Inasmuch as the pleadings and findings herein will support such a judgment, and to the end that litigation may cease herein, it appearing that all payments under the contract are now past due, it is ordered and directed that the judgment of the trial court be modified, and that, as modified, it grant to defendants a period of not less than 90 days within which to pay into court the three $4,800 deferred payments with interest as provided in said contract, and to repay plaintiff for all taxes which he may have paid since and including the tax of 1907 (for which he shall file in court the treasurer's receipts), with interest on such taxes at 7 per cent. per annum from date of payment; that, upon such payment into court, the deed on file be delivered to defendants, together with the abstracts of title to said land showing same free and clear of all incumbrance, except for taxes for 1907 and subsequent years; such judgment also providing that, in case defendants fail to make such payments within time fixed, the title to said land be quieted in plaintiff. In view of the facts, neither party should recover costs in either court. As so modified, the judgment of the trial court is affirmed.

SMITH, J., took no part in this decision.