[L. A. No. 2186. In Bank.—October 8, 1909.]

# W. SCOTT SMITH, Appellant, v. JOSEPH T. BANGHAM et al., Respondents.

OPTION TO PURCHASE LAND—ACCEPTANCE OF OPTION—SPECIFIC PER-
FORMANCE—MUTUALITY.—One having an optional right or privilege under a written agreement of purchasing land upon certain terms within a given time, by electing to accept and exercise the option within the time limited, binds himself by the contract, and removes any objection to its specific enforcement on the ground of want of mutuality.

ID.—CONVEYANCE ON DEMAND OF VENDEE—INEQUITABLE CONTRACT—
REASONABLE TIME FOR DEMAND.—A provision in such contract, whereby the vendor agrees, upon notification of the acceptance of the option by the vendee, to make a conveyance *on demand*, does not render the contract inequitable by entitling the vendee to indefinitely postpone his demand for a deed and thus delay performance on his part. If, under the agreement, the exact time of conveyance and payment were to be fixed by the vendee's demand, such demand would have to be made by him within a reasonable time. What would be a reasonable time is a question of fact to be determined upon all of the circumstances of the case.

ID.—CONSIDERATION FOR CONVEYANCE—ADEQUACY—CONSIDERATION FOR
OPTIONS.—Where the consideration which the vendee, by his acceptance of the option, undertook to pay for the land was fair and adequate, in an action by the vendee for a specific performance of the contract, the question of the adequacy of the consideration paid for the option is immaterial.

ID.—INABILITY OF VENDOR TO PERFORM.—Specific performance will not be decreed against a vendor who is unable for want of title to comply with the contract.

ID.—RIGHTS CREATED BY OPTION—EXERCISE OF OPTION.—The option vests in the grantee the right or privilege of acquiring an interest in the land, and, when accepted, entitles him to a specific performance. Such right, when exercised, relates back to the time of giving the option, so as to cut off intervening rights acquired with knowledge of the existence of the option.

ID.—DECLARATION OF HOMESTEAD SUBJECT TO PRIOR OPTION.—A homestead declared by a wife on land the separate property of her husband, with knowledge of a prior optional agreement for its sale executed by the husband, is subject to such agreement, and to the right of the vendee, after exercising the option to purchase, to demand a conveyance of the land in accordance with the contract, and to have such contract specifically enforced. And it is immaterial whether the vendee exercised his option to purchase before or after the declaration of homestead was filed.

ID.—HOMESTEAD DOES NOT CREATE NEW TITLE.—A declaration of homestead creates no new or additional title: it merely attaches certain privileges and immunities to such title as may at the time be held.

ID.—FINDING AS TO SUBSEQUENT CONTRACT TO CONVEY—PRIORITIES BETWEEN RESPECTIVE VENDEES.—The right of such a vendee to a specific performance of his contract is not defeated by a finding of the court merely to the effect that a third person, not a party to the action, has an interest in the land by virtue of a contract to convey by the vendor, made in good faith and for value. Such a finding does not determine the rights of priority of the respective vendees. For all that appears, the contract of such third person may have been unrecorded, in which event, he would not be entitled to priority, although he purchased for value, without notice of plaintiff's unrecorded contract.

ID.—REVERSAL OF JUDGMENT DENYING SPECIFIC PERFORMANCE—NEW TRIAL.—In view of such finding, a judgment refusing a specific performance will be reversed and a new trial ordered, with leave to the plaintiff to bring in new parties.

ID.—MEASURE OF DAMAGES UPON BREACH BY VENDOR.—Under section 3306 of the Civil Code, a vendee upon breach of a contract to convey land, is entitled to recover the difference between the price agreed to be paid and the value of the land, only where there has been bad faith on the part of the vendor.

APPEAL from a judgment of the Superior Court of Los Angeles County. George H. Hutton, Judge.

The facts are stated in the opinion of the court.

Tanner, Taft & Odell, for Appellant.

Denio & Monk, for Respondents.

SLOSS, J.—The plaintiff appeals on the judgment-roll alone from a judgment in his favor for one dollar. The action was based upon an alleged contract for the purchase of real estate, and the complaint contained two counts, one averring facts upon which plaintiff asserted his right to a specific performance of the contract, and the other seeking damages for its breach.

The court found that on December 26, 1905, the plaintiff and the defendant Joseph T. Bangham entered into a written contract whereby Bangham, in consideration of the sum of one dollar, granted to plaintiff or his assigns, "the right and privilege of exercising an option to purchase" the property in dispute "for the sum and purchase price of $17,000 dollars, . . . provided that the said W. Scott Smith, or his assigns, shall exercise said option to purchase on or before February 26, 1906, by notifying me in writing of such exercise of option. Upon such notification within such time I agree assigns, a reasonable time after said delivery to examine said W. Scott Smith, or his assigns, on the above terms, and agree to furnish and deliver within ten days after such notification, to said W. Scott Smith, or his assigns, an unlimited certificate of title to said real estate . . . showing good marketable title of record to said real estate to be in me free and clear of all encumbrances and allowing the said W. Scott Smith, or his assigns, a reasonable time after said delivery to examine said certificate of title. Said notification and the furnishing of said certificate of title within said reasonable time showing title as aforesaid, shall bind the said W. Scott Smith, or his assigns, to purchase said real estate on said terms." The property referred to in the above instrument was the separate property of the defendant Joseph T. Bangham. On February 26, 1906, the plaintiff elected to exercise the option provided for and to purchase the land in accordance with the terms and conditions named in the writing, and notified Bangham of his election. Bangham refused and ever since has refused and neglected to make, execute, and deliver a deed, or to furnish the certificate of title as provided in said contract.

The court finds that, in response to plaintiff's notification of his election to purchase, Bangham informed the plaintiff that he was unable to give title to the land for the reason that his wife (the defendant Rowena Bangham) held a homestead

on the property and "positively refuses to release it." It is found that the consideration to be paid for the said land was adequate, just, and reasonable and that "the price for the land at the time when plaintiff notified defendant Joseph T. Bangham that he elected to buy was a fair and adequate price for said land." It is further found that the contract was unjust and unreasonable in this, "that the only consideration paid therefor was the sum of one dollar" and that said sum of one dollar was grossly inadequate and unjust for said option; that the said contract is also unfair and unjust in this, that plaintiff was thereby enabled to postpone indefinitely performance on his part. It is found that the defendant Rowena Bangham, the wife of Joseph T., had actual notice and knowledge of the entering into said contract by her husband, and that she did, after the date of said contract, make and file a separate declaration of homestead on said premises; that said declaration was made by her without the knowledge or connivance of her husband. The contract referred to in the complaint has never been recorded. It is further found that the defendant Joseph T. Bangham did not act in bad faith in his failure to perform the contract; that the land had increased in value to the amount of five thousand dollars, as alleged in the complaint, but that plaintiff had not been damaged in any sum other than the sum of one dollar on account of such failure. As conclusions of law the court found, with respect to the first count, that plaintiff was not entitled to recover and that the declaration of homestead filed by defendant Rowena Bangham is valid and is not subject and inferior to the contract relied on. On the second count the conclusion of law was that plaintiff was entitled to recover of defendant Joseph T. Bangham the sum of one dollar and interest thereon from the twenty-sixth day of December, 1905.

On these findings the plaintiff contends that he was entitled to a decree specifically enforcing the contract, and that if, for any reason, such contract should not be enforced, he should recover a judgment for five thousand dollars, the increase in the value of the land.

The agreement signed by the parties on December 26, 1905, was a unilateral agreement, of the kind usually known as an option. By its terms Smith was under no obligation to pur-

chase the land or to pay for it. He was granted the right or privilege of purchasing upon certain terms within a given time. Until he should have exercised this option he was in no way bound by the agreement. His election to accept and exercise the option within the time limited was, however, sufficient to bind him and to remove any objection to the enforcement of the contract on the ground of want of mutuality. (*Hall* v. *Center*, 40 Cal. 63; *Ballard* v. *Carr*, 48 Cal. 74; *Calanchini* v. *Branstetter*, 84 Cal. 249, [24 Pac. 149]; *Thurber* v. *Meves*, 119 Cal. 35, [50 Pac. 1063, 51 Pac. 536]; *Sayward* v. *Houghton*, 119 Cal. 545, [51 Pac. 853, 52 Pac. 44]; *House* v. *Jackson*, 24 Or. 89, [32 Pac. 1027].) The option had at least the force of an offer to sell, and the acceptance of this offer before it had expired or had been revoked constituted a valid and binding contract from which neither party could recede. (29 Am. & Eng. Ency. of Law, 2d ed., p. 601; *Vassault* v. *Edwards*, 43 Cal. 458; *Benson* v. *Shotwell*, 87 Cal. 49, [25 Pac. 249].)

We think the finding of the court that the contract is unfair in that plaintiff was thereby enabled to postpone indefinitely performance on his part, is based upon an erroneous construction of the terms of the agreement. The contract reads that upon notification of acceptance Bangham agrees *"on demand* to grant, sell, and convey said real estate to said W. Scott Smith, or his assigns, on the above terms." It is argued that since the obligation is only to convey upon demand by Smith, the latter may indefinitely postpone the making of his demand, and thereby compel the defendant to be ready to convey to him at all times, without making himself liable for the purchase price. But the contract, reasonably interpreted, does not give him any such right of indefinite postponement. It is provided in the agreement that the notification of acceptance and the furnishing of a certificate of title shall bind him to purchase the real estate "on the above terms." If, under the agreement, the exact time of conveyance and payment were to be fixed by the purchaser's demand, there can be no question that such demand would have to be made by him within a reasonable time. What would be a reasonable time is a question of fact to be determined upon all of the circumstances of the case. So construed, the provision is in no wise inequitable or unfair.

It is found by the court that the consideration agreed to be paid for the land, i. e. the sum of seventeen thousand dollars, was fair and adequate. The plaintiff having bound himself by the acceptance of the option to pay this sum, we think the question whether or not one dollar was an adequate consideration for the option is a false quantity. The plaintiff is not seeking in this action to enforce the option, but to compel compliance with the contract which resulted from his exercise of the option. That contract was one whereby Bangham bound himself to sell the land, and Smith agreed to buy it, for the sum of seventeen thousand dollars. This is found by the court to be an adequate and fair consideration for the conveyance, and on an action by the vendee for specific performance of such contract the adequacy of the price paid for the option is not a material consideration. In *Guyer* v. *Warren*, 175 Ill. 328, [51 N. E. 580], the court said: "The consideration named in the written agreement is one dollar. As the parties agree to sell an option to buy for the sum of one dollar, there is no reason why such an express consideration is not an adequate one." (See, also, *Ross* v. *Parks,* 93 Ala. 153, [30 Am. St. Rep. 47, 8 South. 368].) Inadequacy of consideration alone (without fraud or something in the nature of fraud) is never considered, even in equity, except as bearing upon the right to specifically enforce an executory agreement. It affords no ground for setting aside an executed sale. Here there had been such executed sale of the option, which passed by the writing of December 26, 1905, and the payment of the agreed consideration.

The real question then is whether the fact that the vendor's wife declared a homestead upon the property is a sufficient answer to plaintiff's demand for a conveyance. Specific performance will not be decreed against a vendor who is unable for want of title to comply with his contract. (*Bell* v. *Bank of California,* 153 Cal. 234, 239, [94 Pac. 889], and cases cited.) If the homestead was valid as against a prior agreement to sell, the refusal of the wife to join in a conveyance fully justified the judgment denying specific relief. It may be remarked that neither the pleadings nor the findings disclose the time when the homestead was declared. It is found to have been after the execution of the contract (of option) but whether before or after plaintiff had notified Bangham of

his election to purchase is not shown. We think, however, that the rights of the parties would be the same in either event. It has been said that an option to purchase land does not before acceptance vest in the holder of the option an interest in the land. (*Richardson* v. *Hardwick*, 106 U. S. 252, [1 Sup. Ct. 213]; *Gustin* v. *Union School District*, 94 Mich. 502, [34 Am. St. Rep. 361, 54 N. W. 156]; *Phœnix Ins. Co.* v. *Kerr*, 129 Fed. 723, [64 C. C. A. 251].) On the other hand, there are cases holding that the grant, on a valuable consideration, of an option to purchase, constitutes the grantee the equitable owner of an interest in the property. (*House* v. *Jackson*, 24 Or. 89, [32 Pac. 1027]; *Kerr* v. *Day*, 14 Pa. St. 112, [53 Am. Dec. 526]; *Telford* v. *Frost*, 76 Wis. 172, [44 N. W. 825]; *Wall* v. *Minneapolis etc. Ry. Co.*, 86 Wis. 48, [ 56 N. W. 367].) At any rate the option vests in the grantee the right or privilege of acquiring an interest in the land, and, when accepted, entitles him to call for specific performance. (*Hawralty* v. *Warren*, 18 N. J. Eq. 124, [90 Am. Dec. 613]; *Kerr* v. *Day*, 14 Pa. St. 112, [53 Am. Dec. 526]; *People Street Ry. Co.* v. *Spencer*, 156 Pa. St. 85, [36 Am. St. Rep. 22, 27 Atl. 113]; *Guyer* v. *Warren*, 175 Ill. 328, [51 N. E. 580].) Such right, when exercised, must necessarily relate back to the time of giving the option (*People St. Ry. Co.* v. *Spencer*, 156 Pa. St. 85, [36 Am. St. Rep. 22, 27 Atl. 113]), so as to cut off intervening rights acquired with knowledge of the existence of the option. A subsequent purchaser with notice of a valid and irrevocable option would certainly take subject to the right of the option holder to complete his purchase (*Barrett* v. *McAllister*, 33 W. Va. 738, [11 S. E. 220]; *Sizer* v. *Clark*, 116 Wis. 534, [93 N. W. 539]; *Kerr* v. *Day*, 14 Pa. St. 112, [53 Am Dec. 526]), and we see no reason why the declarant of a homestead should stand in any better position.

A declaration of homestead creates no new or additional title. It attaches certain privileges and immunities to such title as may at the time be held. If the husband, for example, owns a title subject to an outstanding equity, a declaration of homestead by the wife, at least where she has knowledge of this equity, does not destroy it. Her homestead claim is impressed upon the title that her husband had, i. e. the title subject to such rights against it as were known to

her to be held by third parties. These conclusions seem to follow from the former adjudications of this court. In *Gilbert* v. *Sleeper*, 71 Cal. 290, [12 Pac. 172], the plaintiff's husband had entered into an agreement with the defendant Sleeper to exchange two tracts of land and each entered into possession of the tract which he was to receive. Subsequently, Gilbert conveyed to his wife all of his property, including the land which he had agreed to convey to Sleeper and plaintiff filed a homestead upon all the land so conveyed to her. It was held that plaintiff's rights in the tract agreed to be conveyed to Sleeper were subject to the rights created by the agreement. "There was no error," says the court, "in refusing to admit in evidence plaintiff's declaration of homestead. Obviously, she could not, by filing it, defeat or impair the previously existing rights of defendant." In *Snodgrass* v. *Parks*, 79 Cal. 55, [21 Pac. 429], action was brought to quiet title to land which one of the plaintiffs had agreed to convey to some of the defendants, such defendants having wholly failed to pay the purchase money or to comply with any of the conditions of their contract. The defendants relied upon a declaration of homestead filed by one of them upon the land while in possession under this contract. This was held to constitute no defense to the action. The court said: "It is further urged that because a homestead was declared upon the property by Mrs. Dunlap the action cannot be maintained. This cannot be so. Conceding, as claimed by the appellants, that a homestead may be declared upon land held under a mere contract to convey, such declaration did not give any new title, or tend in any way to strengthen or enlarge the one then existing. Therefore, when the equitable title created by the contract, and possession under it, was lost in the manner stated, the homestead fell with it. It would be a marvelous doctrine that the filing of a declaration of homestead could create a new title, or render a bad title good." In *Hayford* v. *Kocher*, 65 Cal. 389, [4 Pac. 350], certain premises were by mistake excluded from a conveyance of lands. The wife of the grantor with knowledge of the mistake filed a declaration of homestead upon the lands so omitted. This was held not to affect the pre-existing right of the grantee to have the conveyance reformed so as to carry title to such premises.

The fundamental basis upon which all these decisions must rest is the proposition that (except where the contrary is expressly declared by statute), a declaration of homestead is subject to all rights in the property known by the person filing the declaration to exist. And this principle, applied to the facts of the present case, requires the holding that the declaration of homestead made by Mrs. Bangham with knowledge of the contract theretofore entered into with the plaintiff was subject to his right to demand a conveyance of the land in accordance with his contract.

The authorities principally relied on by the respondent, *Fitzell* v. *Leaky*, 72 Cal. 477, [14 Pac. 198] ; *Ontario Bank* v. *Gerry*, 91 Cal. 94, [27 Pac. 531] ; *Lee* v. *Murphy*, 119 Cal. 364, [51 Pac. 549, 955], are not in point. These cases hold that a declaration of homestead by the wife is good as against a prior unrecorded mortgage executed by the husband, although the wife had knowledge of the existence of the mortgage. But this conclusion is based upon the express provisions of sections 1240 and 1241 of the Civil Code, which provide that the homestead is exempt from execution or forced sale "except . . . 3. On debts secured by mortgages on the premises, executed and acknowledged by husband and wife, or by an unmarried claimant; 4. On debts secured by mortgages on the premises, executed and recorded before the declaration of homestead was filed for record." Here is an express statutory declaration that certain mortgages only shall be superior to the rights created by a declaration of homestead. As the mortgages in the cases cited did not come within the terms of the statute, they necessarily were inferior to the homestead. Here, however, we have no question of an attempt to subject the land to execution or forced sale from which it is specifically exempted. The question is merely whether antecedent rights in the property shall be cut off by a declaration of homestead, or, otherwise stated, whether such declaration shall enlarge the title owned at the time of its filing. For the reasons stated, we think this question must be answered in the negative.

On the facts as hereinbefore stated, the plaintiff was entitled to a decree specifically enforcing the contract of conveyance made by the defendant Bangham. But the record discloses further facts bearing on the appropriateness of this remedy.

It is found that the American Avenue Building Company, a corporation, claims and has an interest in the said premises, "by virtue of a written agreement to convey by defendant Joseph T. Bangham, made in good faith and for value." If this interest is superior to that of plaintiff it would make it impossible for Bangham to comply with his contract to convey a good marketable title free and clear of encumbrances. But the court does not find the interest of the building company to be superior to that of plaintiff, nor does it find facts from which the respective priorities may be determined. A purchase for value, without notice of plaintiff's unrecorded contract, would not, under our statute, protect the subsequent purchaser unless his conveyance was "first duly recorded." (Civ. Code, sec. 1214.) For all that appears, the building company's contract was never recorded. The facts as found, do not, therefore, offer any impediment to a decree of specific performance.

But the American Avenue Building Company is not a party to this action, and obviously its rights cannot be affected by any decree that might be rendered herein. A reversal of the judgment, with directions to the court below to enter a decree of specific performance, might result in plaintiff's obtaining a conveyance which would be valueless to him. Unless the plaintiff is willing to take and pay for Bangham's title without regard to the validity of the building company's claim, the question whether an effective decree for specific relief can be made should be determined in an action in which every party having an interest in the property is represented. To this end, a new trial should be ordered. If, upon such new trial, it should appear that specific performance cannot be decreed, the question of plaintiff's right to damages, as prayed by the second count of the complaint, will arise. The measure of damages in such cases is clearly defined by section 3306 of the Civil Code. The difference between the price agreed to be paid and the value of the estate may be recovered only where there has been bad faith on the part of the vendor. Here the court came to the conclusion that the defendant Bangham did not act in bad faith. On this appeal on the judgment-roll, we cannot, therefore, direct the allowance of damages for any greater sum than that recovered. But the question of good or bad faith should be con-

sidered anew by the trial court in the light of our views on the main question discussed in this opinion. Accordingly, the issue of damages, as well as the issues arising on the prayer for specific performance, should be retried.

The judgment is reversed, and the cause remanded for a new trial. The plaintiff should have leave to amend his complaint, and to bring in new parties if so advised.

Shaw, J., Angellotti, J., and Henshaw, J., concurred.

BEATTY, C. J., dissenting.—I dissent. A dollar is not an adequate consideration for such an option as is here held to defeat the right of Mrs. Bangham to declare a homestead upon property occupied as such. It was a merely nominal consideration, and as against a right so highly and so deservedly favored as the right of homestead it should be disregarded by a court of equity.

MELVIN, J., dissenting.—I dissent. It does not appear from the record whether or not the declaration of homestead was made prior to the twenty-sixth day of February, 1906— the date upon which appellant notified respondent that he elected to buy the property; but under the rule favoring a construction in support of the regularity of a judgment we may assume that Mrs. Bangham had filed her declaration of homestead before appellant signified his willingness to pay seventeen thousand dollars for the property. If, therefore, she could not make a valid declaration of homestead, the only thing which prevented her from doing so was the option for which plaintiff had paid the price of one dollar. In other words, to find that the declaration of homestead was ineffective we must hold that the option which the purchaser might ignore and surrender without the loss of more than the trifling sum of one dollar, was sufficient to deprive this woman of a right given her by the law under the constitution of California. (Art. XVII, sec. 1.) It may be that after the acceptance of all of the terms of a sale contemplated under the provisions of a contract of this kind and the offer of an adequate price, the wife of the owner of the property, if she knew all of the facts, would be powerless to declare a valid homestead upon it; but we are not here confronted by such a state of facts.

CLVI Cal.—24

Suppose that instead of sixty days, a period of ten years had been named as the time within which the option of purchase might be exercised. Might a husband by the simple device of giving such an option deprive his wife for a term of years of the right of securing a homestead given her by statutes passed under the solemn mandate of the constitution? Such a result, it seems to me, was never contemplated.

In the opinion of the majority of the court, great reliance is placed upon the authority of *People's Street Railway Co.* v. *Spencer,* 156 Pa. St. 85, [36 Am. St. Rep. 22, 27 Atl. 113], to the effect that when an option to purchase is exercised the right to buy the property relates back to the date of the original contract so as to cut off intervening rights acquired by those having knowledge of the option. That was a case not involving any interpretation of the law relating to homesteads. The facts there considered showed that there had been a conveyance of property as security for a loan, but that the grantor took a lease for a nominal sum and an exclusive option of repurchase for the amount of the loan and interest. The court treated the transaction as one in which the railroad company never surrendered its equitable estate and held that upon the repayment of the loan with interest, the company's title became effective as of the date of the option. It was held that upon payment of the loan and interest the railroad company became the owner of the land as it was at the date of the original agreement "or of the insurance money which stood *pro tanto* in its place." The case is so dissimilar to the one at bar that I cannot see its appositeness.

Section 1238 of the Civil Code gave Mrs. Bangham the right to declare a homestead upon her husband's property. This, I submit, existed independently of any adverse equitable title which she was not by statute compelled to recognize as paramount to it. I cannot subscribe to the doctrine expressed in the main opinion that: "The fundamental basis upon which all of these decisions must rest is the proposition that (except where the contrary is expressly declared by statute), a declaration of homestead is subject to all rights in the property known by the person filing the declaration to exist." The code does not declare the instances in which a homestead is *not* subject to execution and forced sale, but does enumerate the four kinds of judgments which *are*

superior to it. (Civ. Code, sec. 1241.) All other kinds of judgments not enumerated are ineffective because not specified in the statute and the inference is inevitable that without the barrier of the statute, no unexecuted judgment could avail against a homestead. By parity of reasoning we should deduce the rule that the homestead must prevail against all liens not by statute made superior to it.

Mr. Justice McFarland in *Ontario State Bank* v. *Gerry*, 91 Cal. 94, [27 Pac. 531, 532], said: "But the doctrine that unrecorded deeds and mortgages are good except as against subsequent purchasers for a valuable consideration does not apply to homesteads. Rights to homesteads are defined by the provisions of the code which directly deal with that subject. 'The doctrine bearing upon conveyances made to hinder, delay or defraud creditors has no application to the creation of a homestead.' And a declaration of homestead is not a 'conveyance' as that word is used generally in the code." And again in the same opinion, he says: "There is no question here about the morality of the transaction. It is simply a matter of statutory provision." In the case of *Lee* v. *Murphy*, 119 Cal. 364, [51 Pac. 553], the homestead defeated the lien of an unrecorded mortgage' of which the wife who declared the homestead had actual notice and this significant language is used in the opinion: "I have not overlooked the equitable considerations so persuasive in this case and so ably presented by counsel for respondent, but they all proceed from the assumption that the case is one for the application of general principles of equitable cognizance, whereas it is hedged in and controlled entirely by legislative enactment." In *Warner* v. *Warner*, 144 Cal. 615, [78 Pac. 24], a homestead on the husband's separate property was held good as against an antenuptial agreement wherein the wife had promised not to claim her husband's property "either as heir or otherwise." In *Simonsen* v. *Burr*, 121 Cal. 582, [54 Pac. 87], it was decided that the question of fraud of creditors cannot be raised as against a homestead which one of the spouses had the right to declare.

Following the rule that a contract is to be construed most strongly against the person seeking to sustain it, I am still of the opinion that the contract in the case at bar was properly held to be unfair because under its terms plaintiff would be

enabled to postpone indefinitely performance on his part, and I wish to repeat the language used as follows in the opinion heretofore rendered in Department Two: "While the contract provides that the option must be exercised by written notification prior to February 26, 1906, it also contains this language: 'Upon such notification within such time I agree *on demand* to grant, sell and convey said real estate to said W. Scott Smith, etc.' The contract further provides that Bangham shall within ten days after notification furnish a certificate of title; that thereafter Smith or his assigns shall have 'reasonable time' to examine said certificate; and that 'said notification and the furnishing of said certificate of title within said reasonable time showing title as aforesaid, shall bind the said W. Scott Smith or his assigns to purchase said real estate *on said terms.*' Conveyance by Bangham 'on demand' being one of said 'terms,' the option might if enforced, result in giving plaintiff the power to hold the land indefinitely, subject to his privilege of purchase and without the expenditure of a dollar, by the simple expedient of omitting to demand from Bangham a conveyance of the title. The lower court properly declined to enforce the specific performance of a contract so inequitable and one in which the consideration was so inadequate. (Civ. Code, sec. 3391, subd. 1.) It follows also that such a contract being of but little more dignity than a *nudum pactum,* would be no obstacle to the declaration of a homestead by Mrs. Bangham on her husband's property. As the court found appellant suffered no detriment other than the payment of one dollar for the option, judgment in his favor for that sum on the second count was proper. (Civ. Code, sec. 3306.) "

I am of the opinion that the judgment of the lower court should be affirmed.

Lorigan, J., concurred in the foregoing dissenting opinion.