[L. A. No. 3080. In Bank.—January 15, 1914.]

JULIUS R. SMITH, Respondent, v. M. E. POST, Appellant.

VENDOR AND VENDEE—OPTION—WHEN BECOMES EXECUTORY CONTRACT TO PURCHASE.—An option to buy land becomes an executory contract of purchase when the vendee makes payments contemplated by the agreement and binds himself to covenants and conditions to be performed in the future.

BROKER—RIGHT TO COMMISSIONS ON FAILURE OF PURCHASER TO COMPLETE CONTRACT AND SALE OF PROPERTY TO OTHERS.—Where the owner of land agrees to pay a broker commissions for effecting a contemplated sale to a certain person upon specific terms, but, after

a contract of sale is entered into, the vendor terminates it because the vendee defaults in payment as agreed, the broker is not entitled to commissions when a sale of the property is subsequently made to other persons upon different terms, whatever may have been his expectation and belief as to right to compensation under' such subsequent sale.

APPEAL from a judgment of the Superior Court of Los Angeles · County and from an order refusing a new trial. Paul J. McCormick, Judge.

The facts are stated in the opinion of the court.

Waterman & Green, W. E. Mitchell, and Hunsaker & Britt, for Appellant.

Valentine & Newby, for Respondent.

HENSHAW, J.—This action is by the assignee of a real estate broker to recover commissions for the sale of defendant's property. Plaintiff recovered judgment and from that judgment and from the order denying his motion for a new trial defendant appeals.

There is little or no dispute over the facts, since the transactions of the parties are in most, if not in all, essentials evidenced by writings. There is a wide variance, however, over the conclusions of law which should be drawn from the facts. They may be thus stated: Defendant was the owner of one thousand two hundred and eighty acres of land which he was willing to sell for two hundred and seventy-five dollars an acre, receiving one hundred thousand dollars in cash, the remainder upon promissory notes secured by mortgage. Several real estate agents had been endeavoring to find a purchaser for the property, and Oscar B. Smith, himself a real estate agent and plaintiff's assignor, became interested in the matter. Oscar B. Smith had for a client Nellie M. Bilhorn, who he thought would herself or with her friends purchase the property. Certain papers were then executed, upon August 18th and 19th and placed in escrow with the Title Insurance & Trust Company of Los Angeles. Defendant, over his signature, agreed to sell his land to Nellie M. Bilhorn at two hundred and seventy-five dollars per acre upon terms. Those

terms were the payment in hand of two thousand dollars, the receipt of which was acknowledged, three thousand dollars to be paid on September 1st, and ninety-five thousand dollars on or before sixty days from the date of the instrument. Upon this payment of ninety-five thousand dollars the deed of Post was to be made to Nellie M. Bilhorn, and she in turn was to execute her note, secured by mortgage upon the property, for the sum of two hundred and fifty-two thousand dollars. Then followed this clause:

"At the option of the said grantee, I will, in lieu of the deed to be handed you in accordance with the foregoing instructions, execute three deeds to such party as may be named by the said Nellie M. Bilhorn, conveying respectively the property in said section 2, said section 11, and said section 14 as above described, in which event the said sum of $100,000.00 shall be paid in the manner hereinbefore called for, but as to the mortgages, you will receive from the grantee in the deed as to the said portion of section 2 a note for $51,188.00, and from the grantee in the deed as to said portion of section 11 a note for $106,316.00 and from the grantee in the deed to the said portion of section 14 a note for $94,496.00, all of said notes and the mortgages securing same to be in the form and otherwise according to the terms of the note and mortgage of $252,000.00 hereinbefore called for."

At the same time Oscar B. Smith, representing himself and signing as agent of Nellie M. Bilhorn, agreed to pay, through the Title Insurance & Trust Company, the sum of three thousand dollars on account of the purchase price of the property on September 1st, and ninety-five thousand dollars on or before October 18th, and upon the making of the latter payment to receive the deed from Post and execute the note and mortgage as above set forth. On September first the three thousand dollar payment was made and the real estate agents who were interested in the commissions to be secured from the sale of the ranch entered into an agreement with each other for the division of those commissions, estimated upon the basis of five per cent of the selling price. The sum of six thousand and forty dollars was apportioned to Oscar B. Smith. At the foot of this agreement, which was wholly between the real estate brokers and agents, and following their signatures, defendant Post, over his signature, declared as follows: "I

hereby agree to pay the above when the first payment of $100,000.00 is completed.'' The next fact of consequence is the failure of Nellie M. Bilhorn to make the ninety-five thousand dollar payment upon October 18th. Oscar B. Smith took up the matter with defendant, explaining to him Mrs. Bilhorn's inability and that a syndicate composed of certain Los Angeles men contemplated the purchase of the property, and that he, Smith, desired an extension of time. The result of this conversation was a memorandum signed by Post and delivered to the escrowee, extending the time for the deposit of money and note and mortgage "as called for in my said original instructions, from October 18, 1909, to on or before October 23, 1909, provided, however, that my grantee or her representative shall this date deposit a further sum of $2000.00, which will make a total of $7000.00 in your possession to apply on the total amount of the $100,000 cash payment originally called for, and provided also that the said grantee or her representatives provide that the said sum of $7000.00 shall be forfeited to me as liquidated damages in case the balance of the money required, together with the notes and mortgage called for is not deposited with you in this escrow on or before October 23, 1909.'' In the same connection, Oscar B. Smith signed and deposited with the Title Insurance & Trust Company the following: "I hand you herewith my check for a further sum of $2000.00 and in the event the balance of the cash portion of the purchase price, together with the notes and mortgage as required are not deposited in this escrow on or before October 23, 1909, you are hereby authorized in that event to pay the sum of $7000.00 now in your possession to the order of M. E. Post as liquidated damages.''

There was a failure to perfect the transaction within the time thus specifically limited, for on the evening of October twenty-third, the day of expiry, Oscar B. Smith went to the home of Colonel Post and told him that "Mr. Johnson and his brother would take the land instead of the syndicate, and that because I had cut it up I was asking more for it, and had priced it to them at $285.00 an acre, and that they would take it, and wanted a few days to finish closing up, and he said, 'I will be in and see you at ten o'clock Monday morning.' '' October 23rd was Saturday. On the following

Monday morning the defendant went to the escrowee, declared that he exacted his forfeiture, demanded and received his deed, and, in effect, the seven thousand dollars. He then went to the office of Oscar B. Smith and told the latter that his money was forfeited and that he had recovered and "taken down" the deed to Mrs. Bilhorn. Smith said, "Colonel, I can't lose that money. I can't afford to. I told you Saturday night that Mr. Johnson would take that land." Defendant then expressed a willingness to enter into negotiations with the Johnsons. The Johnsons, it appeared, desired only one thousand and twenty acres of the one thousand two hundred and eighty, and for this they were willing to pay two hundred and eighty-five dollars an acre. The defendant being willing to reduce the purchase price by more than five thousand dollars for a full immediate payment in money for the land, the transaction with the Johnsons resulted in the payment in cash by them of the sum of two hundred and eighty-five thousand dollars, for which they received title through the Title Insurance & Trust Company to the one thousand and twenty acres of defendant's land. This was upon October 27th. Upon October 28th defendant gave Oscar B. Smith an option to purchase eighty acres of the remaining land. This option was taken by Oscar B. Smith on behalf of Lewis A. Bryan, and was for the sum of twenty-two thousand dollars. In the outcome of this transaction Smith took the title from defendant Post, paid him two thousand dollars, gave him his unsecured note for five thousand dollars and a mortgage for the remaining fifteen thousand dollars of the purchase price. Smith in turn conveyed this to Bryan, subject to the mortgage. Defendant Post presented to Smith the latter's note for five thousand dollars, and it is admitted that Smith received the benefit of this five thousand dollars under the conveyance which he made to Bryan. This transaction was concluded in the early part of December, 1909. Nellie M. Bilhorn became the purchaser of the remaining one hundred and eighty acres under an arrangement whereby she and Smith received full credit on the purchase price of the land for the sum of seven thousand dollars theretofore declared forfeited by defendant, defendant's instructions in this regard reading as follows: "Of the said sum of $17,000.00 you may accept and treat $5000.00 of the money

formerly deposited by Oscar B. Smith to make up said $17,000.00 & the last check of $2000.00 deposited by said Smith & now in your possession you may return to him on close of this escrow—thus disposing of the $7000.00 which have previously been forfeited to me in the escrow.

"M. E. Post.

"Approved: Oscar B. Smith."

The result of these transactions, so far as defendant is concerned, was that he sold his land, received therefor three hundred and fifty-two thousand dollars and no more, and also received cash payments therefor in excess of the sum of one hundred thousand dollars.

It is not questioned but that defendant is not liable for commissions to plaintiff unless he is charged under some contract or memorandum in writing and signed by himself to that effect. (Civ. Code, sec. 1624, subd. 6.) It is equally unquestioned that the only writing which the defendant executed touching the matter of the commissions is the one above quoted, having direct reference to the Bilhorn contract. Much argument is addressed by the parties on this appeal to their conflicting views of that contract. By appellant it is urged that it is a mere option (*Smith* v. *Bangham,* 156 Cal. 359, [28 L. R. A. (N. S.) 522, 104 Pac. 689] ; *White* v. *Bank of Hanford,* 148 Cal. 552, [83 Pac. 698] ; by respondent that it was an executory contract of sale. (*Benson* v. *Shotwell,* 87 Cal. 54, [25 Pac. 249, 681] ; *Martin* v. *Morgan,* 87 Cal. 203, [22 Am. St. Rep. 240, 25 Pac. 350].) But in the view which we take of that contract and of the dealings of the parties under it, a determination of this matter is immaterial and beside the real question. Though it may be added that we are of the opinion that even if the Bilhorn contract might have been considered originally as an option, certainly when she made the payments contemplated thereby up to and including the payment of September 1st, and by her agent bound herself to the covenants and conditions by her to be performed in the future, the contract between the parties ceased to be a mere option and became an executory contract of sale. (*Smith* v. *Bangham,* 156 Cal. 359, [28 L. R. A. (N. S.) 522, 104 Pac. 689] ; *Drew* v. *Pedlar,* 87 Cal. 444, [22 Am. St. Rep. 257, 25 Pac. 749] ; *Easton* v. *Cressey,* 100 Cal. 75, [34 Pac. 622] ; *Long Beach City School Dist.* v. *Dodge,* 135 Cal. 404,

[67 Pac. 499] ; *Glock* v. *Howard etc. Colony Co.,* 123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713].) Whether treated as an option or as an executory contract of sale, a fact which cannot successfully be disputed is that time of performance of the conditions imposed upon the vendee is made of the essence. If it be said to be an option, then it merely results that upon Mrs. Bilhorn's failure to make the ninety-five thousand dollar payment within the time limited by the extension she lost her rights under the option. If, however, it be treated as an executory contract of sale, her failure was such a violation of the contract as to relieve the vendor from the duty of making conveyance to her. Equally aside from the real question is that of the forfeiture and right of forfeiture of the seven thousand dollars. If the seven thousand dollars was the consideration for a mere option it belonged to the defendant without a forfeiture. If it was a payment under an executory contract of sale as liquidated damages, the question presented would be quite a different one, but still one unimportant here for determination, unimportant because in the outcome of the transactions between all of the parties the forfeiture was not insisted upon and the moneys represented by it were applied upon the purchase price of the property. Another indisputable fact is that treating the Bilhorn contract as an executory contract of sale, Mrs. Bilhorn was unable to perform the covenants and conditions imposed on her and relinquished, as she would have been obliged to have relinquished because of her default, any right to demand a deed under the terms of the contract from defendant. Clearly, when those terms are considered, the Bilhorn contract, as a contract, came to an end by the assent of the parties. After the default of October 23rd, neither Mrs. Bilhorn nor her agent had the legal or equitable right to demand a deed from defendant. They had not paid the ninety-five thousand dollars; they could not pay it. Equally indisputable is the fact that defendant did not employ plaintiff generally as a broker to secure a purchaser for his property. He agreed to pay him commissions for a contemplated specific sale to Mrs. Bilhorn or to her nominees, upon specific terms of sale clearly set forth in writing.

The argument of respondent in support of the judgment is to the effect that the sales which were actually made were

sales under and in conformity with the terms of the Bilhorn contract. But in this respondent's position cannot be maintained: 1. Because defendant had formally declared, as he had the right to do, a termination of that contract because of the Bilhorn default; and, 2. Because the sales which were actually made were in no true sense sales under that contract. Thus, the Bilhorn contract provided either for a sale in gross on the payment of one hundred thousand dollars cash and a mortgage upon all of the land for the remainder, or after the payment of the one hundred thousand dollars in gross, a conveyance of defined portions of the land with mortgages back upon those defined portions in named amounts. None of these terms and conditions was carried out in the sales which were eventually made. Indeed, we think that if the sales which finally were made had not followed so closely upon the heels of the Bilhorn contract the contention would lose all of its speciousness. In the sales which were actually made the Johnsons bought a large part of the land and paid substantially all of the money. The sales of the smaller portions followed after. The test of the whole matter in controversy will be found in the answers to the two questions following: It being remembered that plaintiff's employment and contract for commissions was specific and not general, was that contract executed so as to entitle plaintiff to commissions, or was there a default upon the part of plaintiff's principal, the vendee? The answer to this question must be that the contract was not performed because of the vendee's default. Only when one hundred thousand dollars had been paid under that contract were the commissions earned and it was never paid. The second question is this: Did the defendant by contract or by conduct bind himself to pay the commissions under the sales which actually took place? Unquestionably he did not do so by contract, for the only contract was that above quoted and discussed. And as little can it be said that he did so by any course of conduct which would avoid the operation of the statute of frauds. By respondent's own testimony appellant never even orally assented to an extension of the time limited in the Bilhorn contract in their interview upon Saturday night, but merely said that he would see him Monday morning. He did see him Monday morning and formally notified him that the contract was at an end because of

the vendee's default. And while, of course, the subsequent declarations of the defendant in the matter of commissions could not operate to avoid the statute, it will be found that in those subsequent declarations not only did the defendant not recognize his liability for commissions, but consistently declined to recognize such liability. And, finally, it may be added that the conclusion thus reached is not even a harsh one from an equitable point of view. True, the plaintiff was active in his endeavors to sell the property, and his activity resulted in its sale. In that sale he received credit for the seven thousand dollars which had been declared forfeited and which he represented to be his own money, that "he could not afford to lose." How much of this seven thousand dollars was actually the plaintiff's money or how much of it was Mrs. Bilhorn's, or how much of it he would himself have lost, we need not seek to determine. He certainly testified that he told defendant that he could not afford to lose the money, and defendant as certainly relieved him from all liability of loss. Moreover, the defendant did further compensate him to the extent of five thousand dollars in the transaction by which Bryan purchased his portion of the land.

In conclusion, therefore, it remains only to be said that defendant's liability to pay commissions ended with the failure to complete the purchase under the Bilhorn contract. Whatever may have been plaintiff's expectation and belief as to his right to receive compensation under the sales subsequently made, defendant was not bound by such expectation and belief and was not in law liable for the commissions. (*Platt* v. *Butcher,* 112 Cal. 634, [44 Pac. 1060]; *Hicks* v. *Post,* 154 Cal. 22, [96 Pac. 878].)

The judgment and order appealed from are therefore reversed.

Angellotti, J., Sloss, J., Melvin, J., and Shaw, J., concurred.

Rehearing denied.