SAN JOAQUIN FRUIT & INVESTMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 7505.

Circuit Court of Appeals, Ninth Circuit.

May 20, 1935.

724

George M. Naus, of San Francisco, Cal., and Joseph D. Peeler, of Los Angeles, Cal. (J. R. Sherrod, of Washington, D. C., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, John MacC. Hudson, Frederick W. Dewart, and Francis A. Le Sourd, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Petitioner appeals from a decision of the Board of Tax Appeals confirming deficiencies determined by the Commissioner of Internal Revenue in income taxes for the years 1920 to 1922 and 1924 to 1928, inclusive. The income sought to be taxed by the Commissioner was in part derived from the sale of portions of a 1,000-acre tract of land in Orange county, Cal. The dispute arises as to the basis upon which is to be determined the amount of capital included in the sales price and the basis upon which depreciation on the orchards should be determined. Some of the land was sold by petitioner's predecessor in the year 1922, and the balance herein involved was sold by petitioner in the years 1924 to 1928, inclusive.

In Burnet, Comm'r, v. San Joaquin Fruit & Investment Co., 52 F.(2d) 123, this court held that the present petitioner, having succeeded to its predecessor's (San Joaquin Fruit Company) assets, was the "taxpayer" and liable for deficiencies, if any, in income taxes of its predecessor.

The petitioner, San Joaquin Fruit & Investment Company, was incorporated in July, 1922, under the laws of the state of California, with a capital stock of $1,500,000 divided into 15,000 shares each of the par value of $100. The petitioner, on November 8, 1922, issued its stock in exchange for the stock of the San Joaquin Fruit Company, and petitioner concedes that this transaction was a statutory reorganization and no gain or loss was realized by the individual stockholders who exchanged their stock. Thereafter, on December 26, 1922, the San Joaquin Fruit Company was liquidated and dissolved by order of court; the petitioner as sole stockholder taking over all of its assc's upon liquidation. Petitioner contends that since the liquidation of a corporation is a realizing transaction, the basis for the determination of gain or loss from sale of the property after December 26, 1922, is the fair market value of the property on the date of liquidation. The findings of the Board of Tax Appeals as stated in its opinion are in part as follows: "The exchanges of stock by which the petitioner acquired all but three shares of the stock of the Fruit Co. and the old stockholders of that corporation received about 83 per cent of the stock of the petitioner, together with the calling of a meeting of the stockholders of the Fruit Co. for November 18, 1922, to consider the matter of dissolving the Fruit Co., all occurred on November 6, 1922. Within three days after the stockholders acted to liquidate the affairs of the Fruit Co., application was made to the appropriate court for a dissolution decree. After advertisement as required by law and on a date set by the court at the first hearing, a further hearing was had on the application. The hearing resulted in a decree of the court·for the dissolution of the Fruit Co. and the transfer of all its assets to petitioner, its sole stockholder, the outstanding qualifying shares having previously been transferred to it. Except for the period of about 12 days that could have been saved by obtaining waivers from the stock-

holders for the meeting held on November 18, 1922, the proceedings were carried out in practically the shortest possible time. When these steps had been completed, all within about one and one-half months, and the original stockholders of the Fruit Co. held about 83 per cent of the petitioner's stock. Under these circumstances we conclude that the assets of the Fruit Co. were not acquired in liquidation proceedings, as contended by the petitioner, but in connection with a reorganization."

The Board of Tax Appeals, therefore, held that under sections 204 (a) (7) and 203 (h) (1) (D) of the Revenue Act of 1924, 26 USCA § 935 (a) (7), and § 934 (h) (1) (D), the basis for determining gain or loss from the sale of portions of the land in 1924 and subsequent years is the same as it would have been in the hands of the transferor (San Joaquin Fruit Company). We agree with this conclusion. As was said in Ahles Realty Corp. v. Comm'r (C. C. A.) 71 F.(2d) 150, a single transaction may not be broken up into various elements to avoid a tax. The basis for determining gain or loss to petitioner from sale of the property herein involved being the same as it would have been had petitioner's predecessor, San Joaquin Fruit Company, remained the owner thereof and had sold it, we now proceed to a consideration of what that basis is. The applicable statutes provide that in case the property was acquired after March 1, 1913 the basis for determining the capital investment to be deducted from the selling price is the cost of the property, whereas, if it were acquired previous to March 1, 1913, the market value on that date, or the cost thereof, whichever is greater, is to be considered the capital investment in determining the gain derived from the sale. Revenue Act 1918, 40 Stat. 1057, § 202 (a) (1) (2); Revenue Act 1921, 42 Stat. 227, § 202 (a) (b) (1) (2); Revenue Act 1924, 1926, § 204 (a) (b), 26 USCA § 935 (a, b), and note; Revenue Act 1928, §§ 113, 114 (26 USCA §§ 2113, 2114).

The difficulty of applying this provision arises in the case at bar from the fact that the petitioner's predecessor secured an option to purchase the land in 1906 and exercised the option in 1916 so that the question is whether or not the property was "acquired" within the meaning of the Revenue Acts when the option was given, or when the option was exercised. The 1,000 acres of land in question was owned by the Irvine Company in 1906. It was uncleared,

desert land, overgrown with sagebrush, cactus, and similar vegetation. The utility of the land depended upon obtaining an adequate supply of water for irrigation. The Irvine Company also owned land upon which there were indications of an underground water supply. It was thought that by developing this supply by artesian wells and otherwise, a sufficient supply of water could be obtained to irrigate the land, justifying the improvement of the land by planting orange and walnut trees. In order to promote such development, the lease and option involved in this case were made by the Irvine Company as lessor to the San Joaquin Fruit Company which was organized for the purpose of acquiring the lease and option upon the property which had been negotiated by its promoters, C. E. Utt and Sherman Stevens. The lease provided that the lessee should take possession of the property, develop the water supply, plant orange and walnut trees on the land, utilize the land for the production of other crops while the trees were maturing, and pay therefor, during the 10-year term, one-fourth of such crops. The lessee was given the option to purchase all the land at the end of ten years for the sum of $200,000, or to purchase at $200 per acre not to exceed half the land during the life of the lease. An exercise of the right to purchase portions of the tract during the life of the lease worked a termination of the option to purchase all of the tract on the expiration of the term of the lease. We are only concerned with the former provision of the lease because the option was exercised in toto at the end of the 10-year term. Before the 1st of March, 1913, an adequate water supply had been developed and a large part of the area had been set out to trees, thereby greatly enhancing the value of the property. It is claimed by the petitioner that the value of the option on March 1, 1913, was $1,360,000, and that the value of the option on November 30, 1916, when exercised, was $1,950,000; that the value of the land on the former date was $1,635,000, and on the latter date $2,150,000. Evidence was introduced to support this claim, but the Board of Tax Appeals deemed it unnecessary to make a finding on the question because of its decision holding that the property was acquired in 1916 at the time the option was exercised, and that its cost was the option price of $200,000, plus the amount expended in developing and improving the property. The Board of Tax Appeals found that by the

close of 1910 the lessees had expended between $150,000 and $170,000 in developing and improving the tract. It is quite clear from the decision of the Board of Tax Appeals that the increase in value due to the improvements made upon the property and to the development of an adequate water supply before March 1, 1913, less their cost, was included in the taxable income, as fixed by the Commissioner and approved by the Board of Tax Appeals. In determining whether or not this increase in value accruing before March 1, 1913, was properly included, consideration must be given to the constitutional and legislative history of the income tax provisions. Prior to the adoption of the Sixteenth Amendment to the Constitution it was held by the Supreme Court in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759, that Congress had no power, without apportionment of the tax among the several states in proportion to population, to impose an income tax upon gains or profits arising from real estate for the reason that such a tax was a direct tax under article 1, § 2, cl. 3, and article 1, § 9, cl. 4 of the Constitution. The respondent contends that by virtue of the Sixteenth Amendment Congress has power to tax gains realized after the adoption of the Sixteenth Amendment, although such gains represent in part an increase in the value of the property accruing before the adoption of the Sixteenth Amendment and cites in support of this contention Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. This question was expressly reserved by the Supreme Court in deciding the case of Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 428, 73 L. Ed. 851, 61 A. L. R. 906, dealing with the taxability of moneys derived from life insurance companies where income had accumulated thereon prior to the 1st day of March, 1913. The court in that regard stated: "But of this total gain received by the insured a part is attributable to and accrued during the period before the effective date of the Sixteenth Amendment (February 25, 1913), and of the first law taxing the income of individuals (March 1, 1913), and hence, for income tax purposes, must be deemed an accretion to capital not taxable by the income tax act enacted under the Sixteenth Amendment. See So. Pac. Co. v. Lowe, 247 U. S. 330, 334, 38 S. Ct. 540, 62 L. Ed. 1142; cf. Doyle v. Mitchell Bros. Co., 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054; Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087. Whether or not such accretions may be constitutionally subjected to tax, we have no occasion to decide. The present act, at least, does not attempt it. But the question presented necessarily involves a determination of what part of the total gain received by the taxpayer accrued to him after March 1, 1913. In answering it, provisions of the taxing statute enacted as aids in arriving at the answer must be construed with an eye to possible constitutional limitations so as to avoid doubts as to its validity. U. S. v. Delaware & Hudson Co., 213 U. S. 366, 407, 408, 29 S. Ct. 527, 53 L. Ed. 836; U. S. v. Standard Brewery, 251 U. S. 210, 220, 40 S. Ct. 139, 64 L. Ed. 229; Texas v. Eastern Tex. R. R. Co., 258 U. S. 204, 217, 42 S. Ct. 281, 66 L. Ed. 566; Bratton v. Chandler, 260 U. S. 110, 114, 43 S. Ct. 43, 67 L. Ed. 157; Panama R. R. Co. v. Johnson, 264 U. S. 375, 390, 44 S. Ct. 391, 68 L. Ed. 748."

Aside from the question of constitutional power which we find it unnecessary to determine, it is clear that Congress in its legislation imposing income taxes throughout has indicated an intention not to impose a tax upon gains in property value accruing before the adoption of the Sixteenth Amendment. In considering the problem presented by the record, it should be kept in mind that the power of Congress to tax such increases accruing prior to the adoption of the Sixteenth Amendment is doubtful, where there is no apportionment of the tax to the several states as is required by the Constitution for the imposition of a direct tax, and also that in the various Revenue Acts passed by Congress it has attempted to exclude from the income tax provisions increments or gains to property which accrued prior to the enactment of the Revenue Act of 1918 (March 1, 1913). The question is whether under the peculiar circumstances of this case relating to an option granted before March 1, 1913, and exercised after that date, the language of the act requires or permits an imposition of a tax on the capital gains accruing prior to March 1, 1913. In effect, the contention of the respondent is that the word "acquired," in section 202 (a) (2) of the Revenue Act of 1918 and similar provisions of the later revenue acts construed with technical nicety, requires the imposition of a tax upon the gain of $1,000,000, or more

in the value of the real estate which accrued between 1906 and March 1, 1913. It is clear that if the original owner had not parted with the property until 1916 and had sold the property at that time for its market value, that the owner would not be taxable for that portion of the purchase price which represented gains in value between 1906 and March 1, 1913. Similarly, if an agreement to purchase had been entered into between the owner and the lessee in 1906, it is equally clear that the purchaser would not be required to pay a tax upon the increase in its value prior to March 1, 1913, when it later sold the property and realized a gain. The decision of the Board of Tax Appeals is based upon its conclusion that the taxpayer acquired no interest in the property prior to the exercise of the option to purchase in November, 1916. Whether or not the holder of an option has an interest in the real estate covered by the option in a strict technical sense is not necessarily determinative in deciding the applicability of the income tax laws. It has been frequently said that the court looks to the substance of the transaction rather than to the technical niceties in determining the applicability of the taxing statutes, although, in the administration of the revenue laws much depends upon the statutes of the various states controlling the significance and effect of the transaction involved.

 Under the law of California it is clear that the option contained in the lease gave to petitioner's predecessor such a right as will be protected in equity. Gordon v. Dufresne, 205 Cal. 512, 271 P. 1066; Chapman v. Great Western Gypsum Co., 216 Cal. 420, 14 P.(2d) 758, 85 A. L. R. 917. If the petitioner's predecessor, instead of exercising the option on the 30th of November, 1916, had on that date sold the option to some third party, it would have realized a taxable gain which would be measured by the difference between the market value of the option on March 1, 1913, and the price for which it was sold on November 30, 1916. Because it exercised the option and thus acquired the property instead of selling the option for its market value, is it to be taxed not only for the increase in value after March 1, 1913, but for its increase between the execution of the option in 1906 and March 1, 1913? These considerations lead to the conclusion that if the decision of the Board of Tax Appeals is to be sustained it is because under the peculiar circumstances of the case

an effect is to be given to the language used by the Congress in the imposition of the income tax which not only is entirely inconsistent with the general purpose and scheme of taxation thereby imposed, but also is of doubtful constitutionality. These results are to be avoided if it can reasonably be done. Counsel for petitioner suggests two methods of avoiding this result; one by treating the purchase as having been made retroactively on the date of the option, the other, more favorable to the taxpayer, by treating the transaction of November 30, 1916, when the option was exercised, as an exchange of assets, that is, an exchange of the option and $200,000 for the land, and in determining the gains derived from subsequent sales the basis of capital investment is to be in effect the value of the land in 1916.

 As to whether or not the contract of sale resulting from the exercise of the option relates back to the time of the execution of the option the authorities are not without conflict. The divergence of authorities is pointed out in the following quotation from 66 Corpus Juris, p. 605, § 29: "It has been held that the acceptance of an option takes effect on the date of the acceptance and binds the party only to the conveyance of the property in its present condition, and it does not relate back to the date of the option so as to cut off intervening rights acquired with notice of the option. On the other hand, it is held that acceptance of an option and performance of the conditions entitled the holder of the option to call for a performance as of the date of giving the option. (Notes 93, 94 and 95.)".

It has been held in California that upon the exercise of an option, for certain purposes the contract of sale thus arising between the optioner and the optionee relates back to the time of the execution of the option. This rule was applied by the Supreme Court of California in Smith v. Bangham, 156 Cal. 359, 104 P. 689, 692, 28 L. R. A. (N. S.) 522, where it was said, in referring to the rights of the optionee who had exercised his option, "such right, when exercised, must necessarily relate back to the time of giving the option," citing People's St. Ry. v. Spencer, 156 Pa. 85, 27 A. 113, 36 Am. St. Rep. 22, "so as to cut off intervening rights acquired with knowledge of the existence of the option." Applying that principle, the California Supreme Court enforced the rights of the option purchaser

as against the rights of the wife of the seller based upon her declaration of homestead upon the property between the date of the giving of the option and of the exercise thereof.

Admitting this divergence of the authorities and assuming that it is a matter of doubt as to whether or not for all purposes the contract for a conveyance of real estate resulting from the exercise of an option by the optionee relates back to the time of giving the option, it is clear that so far as the rights of the seller and purchaser are concerned the contract resulting from the exercise of the option does relate back to the giving of the option. It is because of the binding offer from the optioner that the optionee is entitled to purchase the property at a fixed price at the time the option is exercised. The two contracts, the giving of the option and the contract of sale resulting from its exercise, are in effect parts of a single transaction differing from a completed sale, in that the optionee is entitled to refrain from entering into the contemplated agreement of sale if he so desires. From the standpoint of the income tax laws, the rights of the optionee, upon the exercise of the option, should be related back to the date the option was given and the resulting contract treated as having been made on that date.

We conclude then that the optionee and lessee "acquired" the land within the meaning of the income tax laws as of the time the option was given, and that the taxable gain resulting from subsequent sales of a portion of the land should be determined by deducting from the selling price the value as of March 1, 1913, of the land sold.

The conclusion we have reached as to the effect of the exercise of the option also disposes of petitioner's contention that the transaction on November 30, 1916, resulted in an exchange of capital assets and renders further discussion of that contention unnecessary.

Another question in the case is as to the proper allowance for the depreciation on the orange and walnut trees upon the property. The petitioner contends that the basis for the determination of such depreciation depends upon the proper basis to be used in determining the value of the orchard. The government does not contest this declaration, and we may assume that our decision upon the only questions discussed by the respondent will be a sufficient guide to the Board of Tax Appeals for the reconsideration of the question of depreciation when presented to it.

The decision of the Board of Tax Appeals is reversed, with instructions to reconsider the question before it in accordance with this opinion.